Blodgett *v.* Bickford et al.

---

SUMNER BLODGETT *v.* DANA BICKFORD AND JAMES TATE.

*Principal and Surety. Effect of surrender of a note by mistake.*

If a note be delivered up to be cancelled by mistake, and the payee before its maturity notify the makers of the mistake, and that he still looks to them for payment of the note, he may recover upon it, as well against a surety upon the note as the principal himself, provided the surety has not, prior to such notice, relying upon the surrender of the note, relinquished securities held by him to protect his liability upon the note.

ASSUMPSIT upon a promissory note for one hundred and fifty dollars, dated January 26th, 1855, signed by the defendants, and payable to the plaintiff in one year from date, with interest. The

declaration also contained the common counts.  Plea the general issue and trial by the court at the June term, 1857, POLAND, J., presiding.

The facts in the case sufficiently appear from the opinion of the court  The defendant, Bickford, made no defence, and the trial was only upon the question of the liability of Tate.

The county court rendered judgment for the defendant Tate, to which the plaintiff excepted.

*T. P. Redfield*, for the plaintiff.

*J. Cooper*, for the defendant Tate.

The opinion of the court was delivered by

PIERPOINT, J.   In this case the plaintiff claims to recover the amount due on a promissory note given by the defendants to him, dated January 26th, 1855, for the sum of one hundred and fifty dollars, payable in one year from date.   The plaintiff loaned the money for which the note was given to the defendant, Bickford, to enable him to prosecute a claim for a patent for a machine which he supposed he had invented, and the defendant Tate signed the note with Bickford as his surety.   At the same time Bickford agreed with the plaintiff to let him have the right, to be secured by said patent, to two-thirds of the territory of the state of Vermont and out of the avails of the sale of the right, for this territory, this note was to be paid.   On the strength of this agreement the plaintiff afterwards contracted to sell the right to one county for a note for seventy-five dollars, and to another county for one hundred dollars.   For this last contract no note was given.   After these contracts were made, the defendant Bickford called on the plaintiff to surrender the note for one hundred and fifty dollars, as he had sold more than enough territory to pay it.   The plaintiff gave up the note and it was cancelled, with the knowledge of Tate.

Bickford failed to obtain a patent for his invention and the note for seventy-five dollars was given up by the plaintiff and his other contract of sale of territory for one hundred dollars became inoperative.   These facts transpired in the spring of 1855.   In August or September 1855, the defendant Bickford left this state and has

not returned. Soon after his departure, and some months before the note in suit became payable, the plaintiff gave the defendant, Tate, notice that he should claim to hold him liable on the note. The court below decided that it was the duty of the plaintiff to give the defendant, Tate, notice within a reasonable time after ascertaining that the sources from which said note was to be paid had failed; that he had not done so, and therefore could not recover of Tate.

It is not contended in this case that the debt due from the defendants to the plaintiff has been paid, or in any manner satisfied. The facts detailed in the bill of exceptions can not have any such effect. At the time the note was surrendered both parties no doubt honestly supposed that the patent would be granted, and that the plaintiff had in his hands, by reason of the said contracts, the means from which his note would be paid, but when Bickford failed to obtain a patent, the plaintiff's contracts for the sale of it of course fell to the ground, and not only the entire consideration, on which the note was surrendered, failed, but also the source from which the parties, in the outset, contemplated that the note would finally be paid. The happening of these events left the parties in the same position as to their legal rights and liabilities as though no contract for the transfer of a part of the right for this state had been made between them. It can not be contended that the surrender of the note, under these circumstances, operated to discharge the obligation existing between these parties; but it is contended that, inasmuch as Tate, who was surety for Bickford, knew that the note was surrendered, and had reason to suppose that he was discharged, therefore, when the events transpired which showed that he was not discharged, it was the duty of the plaintiff to give him notice thereof within a reasonable time. This position, we think, is not sound. What has transpired to change the legal relations between the parties? The surrender of the note can not have that effect any more in this case, than though it had been given up in consequence of any other mistake that the parties may have made in relation to it. The note was given up not because it had been paid, but because the parties *supposed* it would be paid from means in the plaintiff's hands. When these expectations failed, it left the original liability in full force; indeed, the obliga-

tion on the defendants was the same as at first, and the same as it would have been if the note had not been surrendered. If all the facts in the case had existed except that the note had not been given up, but all parties had fully expected that it would be paid from the sources in the plaintiff's hands, it would hardly have been claimed that on the failure of those sources, the plaintiff was bound to give notice of such failure before the note became due or lose his debt. The fact, that the defendant Tate was a surety for Bickford, we think can make no difference in this case. As between the defendants and the plaintiff both the defendants were principals, and he had the right to treat them as such, and if notice that he intended to rely on that note, which he had given up, was necessary to prevent his losing his claim, it was just as necessary to give such notice to Bickford as Tate.

The only duty that the law imposed on the plaintiff by reason of his knowledge that Tate was surety for Bickford, was so to deal with Bickford as not to prejudice the legal rights of Tate as between him and Bickford. If then the surrender of the note under the circumstances existing in this case did not discharge the defendants from their liability to pay the same when it fell due, we know of no rule of law that imposes upon the plaintiff the performance of any act, not contemplated by the original contract, in order to enable him to retain his right to demand the money when the note became due, and to enforce it if it was not then paid.

If the defendant Tate had security from Bickford to indemnify him against liability in consequence of signing said note, which he had surrendered on the giving up of the note, or if the note had become due, so that he could have paid it and then secured himself therefor against Bickford, or had been deprived of any legal right existing between himself and Bickford, in consequence of the surrender of the note or the plaintiff's neglect to give him notice so as to change the legal and equitable relations existing between them, the case might then merit a different consideration. But in the absence of all such facts in the case, we think that the plaintiff is not deprived of his right to recover in consequence of not having given notice at an earlier day of the failure of the sources of payment on which the parties relied.

Judgment reversed and the cause remanded.