## MORRIS ET AL. v. REYMAN, GUARDIAN.

[No. 8,063. Filed December 10, 1913.]

1. PAYMENT.— Mistake.— Evidence.— Sufficiency.— Where plaintiff testified that, on the delivery to him of checks in a certain amount in payment of a note of a less amount, he cancelled the note and delivered it to defendant together with what he believed was the correct change, that thereafter on the same day he discovered a shortage in his cash and discovered from a memorandum used in calculating the amount due on the note that he had made a mistake in subtraction, thus tracing such shortage to the overpayment of defendant, a verdict for plaintiff had some evidence to support it, and cannot be disturbed on appeal on the ground that the evidence was insufficient. p. 114.

2. PAYMENT.—Definition.—In legal contemplation a payment is the discharge in money, or its equivalent, of an obligation or debt owing by one person to another. p. 114.

3. BILLS AND NOTES.—Payment.—Evidence.—Mistake.—While the delivery to plaintiff of checks in a certain sum in payment of a note for less sum, and his acceptance thereof for the purpose of satisfying such note out of the proceeds of the checks, constituted prima facie a payment of the note and a discharge of the debt, where it appeared that plaintiff, by mistake in deducting the amount of the note from the amount of the checks, paid defendant a greater sum than the balance due him, there was no actual payment of the note so as to prevent a recovery of the amount overpaid to defendant, since to constitute such payment the defendant was bound to allow the sum due on the note to remain with plaintiff, and, even though plaintiff's failure to retain the correct sum was caused by his own error, it was defendant's duty to correct the mistake. p. 115.

4. GUARDIAN AND WARD.—Payments by Guardian.—Evidence.—Appeal.—In an action by a guardian to recover money erroneously paid to defendant as change on the latter's payment of a note

due to plaintiff's ward, where it appears from the record on appeal that plaintiff testified that he was such guardian, and that defendant's counsel admitted that plaintiff had purchased the note from the original payee before maturity, the judgment for plaintiff cannot be reversed on the ground that the proof does not support the allegations of the complaint, since, though there was no other evidence on the subject, it cannot be said that the jury could not have properly inferred from the evidence given, and the conduct of the parties, that plaintiff purchased the note as guardian with the funds of his ward.  p. 117.

5.  APPEAL.—*Presenting Questions Below.—Failure of Proof.*—A judgment will not be reversed for want of direct evidence to establish an essential fact which the jury may have inferred, where appellant failed to contest such fact at the trial.  p. 118.

From Washington Circuit Court; *Thomas B. Buskirk*, Judge.

Action by Millard Reyman, as guardian of Anna Craycraft, a person of unsound mind, against Rolla E. Morris and another.  From a judgment for plaintiff, the defendants appeal.  *Affirmed.*

*Elliott & Houston*, for appellants.
*James L. Tucker*, for appellee.

IBACH, J.—Millard Reyman, as guardian of Anna Craycraft, a person of unsound mind, brought this action by a complaint to recover on a note executed by defendants to one Mat Kinney and by him transferred to plaintiff, which note it was alleged, was delivered by mutual mistake of plaintiff and defendant Morris to said defendant as paid, whereas in truth and in fact there was due plaintiff as guardian the sum of $100.  Plaintiff recovered judgment for $100.

The errors assigned and argued question the court's action in overruling appellants' motion made at the close of plaintiff's evidence, to instruct the jury to return a verdict for defendants, and in overruling appellants' motion for a new trial, on the grounds that the verdict of the jury is contrary to law, and is not sustained by sufficient evidence.

The evidence showed that defendants had executed a note to Mat Kinney for $135, that Millard Reyman was the guardian of Anna Craycraft; that he purchased said note for $135 before maturity from Mat Kinney; that when the note was due, defendant Morris went to the bank of which Reyman was cashier, and told Reyman that he wanted to pay off this note, and tendered to him three checks amounting to $382.25 to pay off the note, which amounted to $139.09; that Reyman paid Morris an amount which he believed to be the difference between the amount of the checks and the amount due on the note, and marked the note paid and delivered it to him. Reyman testified that afterwards on that same day he discovered that he was $100 short in his cash, and was able to trace the shortage to the fact that in making change for Morris he had paid him $100 too much, as shown by a memorandum used by him in calculating the amount due on the note which was to be deducted from the amount of the checks presented, and in which calculation he had made a mistake in his subtraction, "and that he brought this action for the purpose of collecting the hundred dollar mistake he had made." Morris denied that he was given any more than the correct amount of change, and denied receiving the $100 for which the suit was brought. The jury by its verdict, however, found against Morris on that point, and as there is evidence to support such conclusion, we can not disturb it as regards that phase of the case.

The principal question is, Do the facts disclosed by the testimony of Reyman show a payment of the note, in which case there could be no recovery in a suit on the note, and appellee's proper remedy would have been a suit for money had and received, or was there merely a part payment of the note, leaving an unpaid balance recoverable in an action like the present? The word payment has a well-understood meaning, and in legal contemplation payment is the discharge in money or its equivalent of

an obligation or debt owing by one person to another. 3 Elliott, Contracts §1925. So under the facts of this case, the delivery to appellee of the particular checks, largely in excess of the amount due on the note and his acceptance thereof for the purpose of satisfying such note out of the proceeds of the checks, paid in due course, would constitute, *prima facie,* a payment of the note and a discharge of the debt. Does the fact, however, that appellee made a mistake in deducting the amount due on the note from the amount of the checks and in paying the difference to appellant Morris, gave him a larger amount than the balance due him, change the situation and constitute the transaction a partial payment only of the note, and a discharge of the debt only to the extent of the sum retained by appellee? It must, we think, be conceded that the delivery of the checks, the receipt of the same as so much cash, the payment of the checks, the cancellation and surrender of the note and the making of change are all to be taken as a part of one and the same transaction. It required the doing of all of these acts to consummate the purpose and real intention of the parties, a complete and absolute payment of the note. Consequently, it cannot be said legally that there was actual payment if the payee through a mistake on his part or through fraud or mistake on the part of the payor, did not retain an amount of money equal to the amount of the debt, the sum which appellant well knew he was expected to pay and which appellee supposed he had retained. To constitute a payment of the note it was the duty of the payor not only to deliver to the payee a sufficient sum of money to cover the debt but it was necessary to allow it to remain with him. It was the duty of the party making the payment to see that he received the correct change as well as it was the duty of the payee to make the correct change.

We can see no reason why the same rules of law should not be applied to this case as to one where counterfeit money

had been given to pay the note, or where the payor of a note actually delivered to the payee a less amount of money than was due on the note and both parties had acted upon the belief that the amount delivered covered the amount due. *Blodgett* v. *Bickford* (1858), 30 Vt. 731, 73 Am. Dec. 334; *Markle* v. *Hatfield* (1807), 2 Johns. (N. Y.) *455, 3 Am. Dec. 446, 447; *Frontier Bank* v. *Morse* (1842), 22 Me. 88, 38 Am. Dec. 284, 289; *First Nat. Bank* v. *Buchanan* (1888), 87 Tenn. 32, 33, 9 S. W. 202, 1 L. R. A. 199, 10 Am. St. 617; *Reynolds* v. *French* (1836), 8 Vt. 85, 30 Am. Dec. 456; *Liesemer* v. *Burg* (1895), 106 Mich. 124, 63 N. W. 999. "It is set out in the Negotiable Instruments Law that: 'A negotiable instrument is discharged by the intentional cancelation thereof by the holder.' But 'a cancelation made unintentionally, or under mistake, or without the authority of the holder is inoperative; but where an instrument or any signature thereon appears to have been canceled the burden of proof lies on the party who alleges that the cancelation was made unintentionally, or under a mistake, or without authority.' * * * where the surrender or cancelation of the instrument is induced by fraud, the maker is not released from liability; likewise where an instrument has been surrendered by mistake upon the supposition that it was fully paid, the debtor will remain liable for the balance still unpaid." 4 Elliott, Contracts §3473. See, also, Acts 1913 p. 120, §§119, 123. Though the negotiable instruments law was not adopted in this State until after the beginning of this action, yet there are no decisions of our courts in conflict with the provision of this law above set out.

In any event it seems to us that before there could be actual payment of this debt there must have been a complete discharge of it, and before there could be such discharge there must have been a full and complete performance of that which the parties undertook to do and when the maker of the note in suit carried away with him a portion of the money which should have been left with the payee, he failed

to do what his contract required of him, and although it may be said that he was able so to do on account of the mistake of the payee, yet it was a mistake of which the obligors on the note cannot take advantage, a mistake which should have been corrected at the time of the transaction, or when a demand for the return of the money was made, and not being corrected then, it must be corrected now. Indeed, it must be considered unconscionable to hold that such a transaction as is developed by the facts here would constitute a discharge of the note.

If appellant Wyman, the surety, had surrendered to the maker anything of value which might have been delivered to him for his protection on his becoming such surety on the note and he had lost any legal rights existing between himself and such maker, by reason of the note being canceled by appellee's mistake the case might require a different consideration. While we do not think the mistake of appellee would operate as a discharge of the obligation between appellee and the payor, yet such payee might, under such circumstances, be estopped to assert any further claim against the surety. See cases above cited. Appellants have presented no such conditions, however, and we are not required to consider further this phase of the subject.

It is also contended that the evidence fails to support the allegations of the complaint, in that it does not appear that plaintiff purchased the note as the guardian of Anna Craycraft. It appears from the record that when plaintiff first took the stand he was asked his name, and then asked if he was the guardian of Anna Craycraft, a person of unsound mind, to which he answered that he was. It was then admitted by appellants' counsel that the witness Reyman purchased the note in question from Mat Kinney before maturity. There is no other evidence tending to show that he purchased it in his capacity as guardian. It must be admitted that there is in the record no direct evidence on the point, but we cannot say that the jury could

not have inferred properly from the evidence given and the conduct of the parties the fact that plaintiff as guardian of Anna Craycraft purchased the note in question with her funds and as there was no dispute about the matter at the trial, the judgment should not be reversed on account of it. The motion to direct the judgment for defendant 5. was made solely on the ground that the complaint declared on a note, and the evidence showed that it was a suit on an account, if anything at all. So that at the time of the trial this contention of appellants was not presented to the court in any manner, and there is now no reason to reverse the judgment for failure of proof. *Louisville, etc., R. Co.* v. *Goodbar* (1882), 88 Ind. 213; *Moody* v. *State, ex rel.* (1882), 84 Ind. 433, 436.

We find no error in the actions of the court which are complained of. Judgment affirmed.

NOTE.—Reported in 103 N. E. 423. See, also, under (1) 30 Cyc. 1325; (2) 30 Cyc. 1180; (3) 30 Cyc. 1316; (5) 2 Cyc. 699.