MERCHANTS NATIONAL BANK & TRUST COMPANY, EXECUTOR, ETC. *v.* WINSTON ET AL.

[No. 18,989. Filed June 17, 1959.]

*Frederick J. Capp, Jack C. Brown,* both of Indianapolis and *Ging & Free,* of Greenfield, for appellant.

*Dann & Backer, Herbert J. Backer, Philip D. Pecar,* all of Indianapolis, *Davis & Williams* and *George B. Davis,* of Greenfield, for appellees.

MYERS, P. J.—This is an action on a promissory note brought by Frederick T. Holliday as assignee of the note to recover from appellees Ben A. Winston and Martin Weinstein as co-makers and endorsers the unpaid principal balance of $9,610, interest in the amount of $12,557.07, and attorney's fees in the amount of $5,000.00 or a total of $27,167.07.

The complaint alleges in substance that on or about April 20, 1939, Hydraulic Steel Corporation, an Indiana corporation (hereinafter called the corpora-

tion), and appellees Ben A. Winston and Martin Weinstein jointly and severally signed, executed and delivered to The Indiana Trust Company of Indianapolis, Indiana (hereinafter called the bank), a promissory note in the amount of $11,000, payable thirty days after date at the bank, without relief from valuation or appraisement laws. Each of said appellees endorsed the note individually. The evidence established that Ben A. Winston was president of the corporation and Martin Weinstein was treasurer.

There was issued and outstanding 100 shares of the capital stock of the corporation. Winston held 50 shares, Weinstein held 10, and the bank as trustee for Fred Holliday held 40. The shares of Winston and Weinstein were pledged, and a chattel mortgage on certain assets of the corporation was executed, to secure the payment of the note. A written guaranty was executed by Holliday and delivered to the bank, wherein Holliday guaranteed payment of any and all notes issued by the corporation to the bank, not to exceed $12,500. The note on which this complaint is based was the only note issued.

The corporation made payments to the bank totaling $1,390 of principal, reducing the note to a balance due of $9,610. The corporation and appellees individually as makers and endorsers defaulted and Holliday as guarantor paid the bank the remaining balance of $9,610 plus interest. Upon payment, the bank assigned the note to Holliday.

As assignee and holder of the note, Holliday brought this action to recover the unpaid balance plus interest and attorney's fees, the total of which was claimed to be $27,167.07. Holliday died while the action was pending and appellant The Merchants National Bank &

Trust Company, as Executor Under his Last Will and Testament, was substituted as plaintiff.

Appellees' answer consisted of seven paragraphs, being in substance a general denial, payment and satisfaction, set-off, conversion of the collateral security, nonpayment of intangible taxes, that appellant's decedent was not a purchaser in good faith and the note was assigned after maturity, and, finally, that he was not a guarantor for the reason that his signature did not appear on the note.

Appellant's reply to the answer denied the note had been paid, and alleged that the balance due together with interest at 8 per cent. per annum and attorney's fees were owing; alleged that the value of the collateral security stated in the promissory note was a false and fraudulent representation of appellees and that the collateral was actually worth far less than the amount owing on the note; that Holliday had authority to sell the collateral, but was not required to do so and might at his option retain it; that the intangible taxes had been paid in full; that appellant's decedent was the guarantor of the note and had paid $9,610 thereon and was the holder of the note and entitled to recover thereon.

Appellees also filed an amended cross-complaint asserting Holliday had converted the collateral security and asked for a set-off and damages for such conversion. Appellant answered in general denial and asserted that appellees' cross-complaint was not filed within the time required under the statute of limitations.

The issues being thus formed, the case was tried without a jury before the Judge of the Hancock Circuit Court on the above pleadings. The trial took place on September 19, 1955. On February 8, 1956, the

Judge found in favor of appellant and against the appellees in the sum of $7,875.33. The court also found against the cross-complainants in favor of cross-defendant. Appellant filed a motion to modify the judgment and a motion for a new trial, both of which were overruled.

Appellant's motion for a new trial was based on the following grounds: (1) Error in the assessment of the amount of recovery in that the amount was too small; (2) the decision of the court was not sustained by sufficient evidence; and (3) the decision of the court was contrary to law.

The following are the assigned errors relied upon by appellant: (1) The court erred in overruling appellant's motion for a new trial. (2) The court erred in overruling appellant's motion to modify the judgment. There were two other errors alleged in the assignment of errors which concern certain demurrers of appellant to the answer and cross-complaint which were overruled. These were waived by appellant and were not involved in the argument and so will not be considered herein.

In its motion to modify the judgment, in substance, appellant claimed the judgment was erroneous because it did not conform to the pleadings, proof, decision *or finding*; that appellant received less relief than it was entitled to because of too large an allowance or set-off to the appellees; that appellant was entitled to receive 8 per cent. interest, as provided in the note, instead of 6 per cent.; and that appellant was entitled to attorney's fees.

The basis of appellant's motion to modify is contained in it's memorandum attached thereto. After

setting forth the entry of judgment, appellant says as follows:

"At the time of announcing said judgment, and as a part thereof, the Judge also delivered the following to the attorneys for plaintiff:

"Press ......... $2000.00
Tractor ....... 1500.00   "(written in)
Truck ........ 500.00
Scales ....... 500.00   "Memorandum not
Steel ......... 1000.00     entered in the
Pump ........ 250.00     record

$5750.00

"Int. on $9610.00
from 5/20/39 to
10/20/39 five
months at 6%..$ 240.25

"Int. on $3860.00
from Oct. 20,
1939 to Feb. 8,
1956 at 6%.... 3775.08

"TOTAL INTER-
EST ......... $4015.33
"Principal ...... 3860.00

"TOTAL DUE..$7875.33

"No attorney fees have been allowed in this case for the following reasons, although the complaint states that it is a suit on a note which has been assigned to plaintiff, the real action is not on the note but on an implied contract to be reimbursed for money paid. See 28 Corpus Juris page 1037, Section 214 on an implied contract, no attorney fees can be recovered. To recover attorney fees, there must be a suit upon an instrument which provides for attorney fees or the attorney fees must be authorized by statute."

In the brief and reply brief, appellant argues that the memorandum submitted by the Judge was ac-

tually a finding of fact and was therefore a part of the record and should be considered by this court. Appellees in their argument take the opposite viewpoint.

It is obvious this memorandum purports to be a very informal statement by the Judge, given only to attorneys for appellant, and, as is clearly indicated by the memorandum itself, was not considered as a part of the record by the Judge. It was not signed, and the only means of identifying it in the record as a statement by the Judge is the assertion of such by appellant in its memorandum to the motion to modify the judgment.

Section 2-2102, Burns' Ind. Stat. (1946 Replacement), reads in part as follows:

"Upon trials of questions of fact by the court, it shall not be necessary for the court to state its finding, except generally for the plaintiff or defendant, unless one of the parties requests it, with a view of excepting to the decision of the court upon the questions of law involved in the trial; in which case, the court shall first state the facts in writing, and then the conclusions of law upon them, and judgment shall be entered accordingly."

There are numerous Indiana cases wherein the Appellate and Supreme Courts have considered similar types of memoranda prepared by trial judges. In the case of *Hinshaw* v. *Security Trust Co.* (1911), 48 Ind. App. 351, 356, 357, 93 N. E. 567, 569, the trial judge, after rendering judgment, made a *nunc pro tunc* entry seeking to place in the record an opinion of the court purporting to have been delivered in writing by the judge at the time finding and judgment were entered. This court said·

"We are asked to consider this opinion for the purpose of determining what evidence was considered and what evidence was disregarded by the court in reaching a decision. No special finding of facts was requested, and none was made. The law does not require that a trial court shall deliver an opinion in writing. If such an opinion is delivered, it has no proper place in the record; and, even though such an opinion is copied into the record of the lower court and embodied in the record on appeal, this court cannot consider it for any purpose. Where no request is made by any party for a special finding of facts, a finding of the court, stating a part or all of the facts, will be treated on appeal as a general finding, and the facts specially found will be disregarded. . . . The same rule is applicable to a written opinion filed by the trial court, concluding with a general finding. The opinion must be disregarded and the finding treated as a general one."

The same question arose in the case of *Cooley* v. *Kelley* (1913), 52 Ind. App. 687, 693, 694, 96 N. E. 638, 641, 98 N. E. 653, wherein the Court said,

"The record does not show any request for a special finding in this case, and under well-established rules the opinion of the court delivered in announcing its decision, although carried into the record on appeal, cannot be regarded as anything more than a general finding. . . .

"The motion for judgment notwithstanding the finding was based on the written opinion of the court, and as we have seen this opinion must be disregarded and the finding treated as a general one, there was no error in overruling the motion. The motion to modify the judgment was on the same ground, and as the motion questioned the validity of the judgment, and not its form, the same was properly overruled."

The following cases state the rule that where a special finding of facts is not requested, the court's

finding, although amplified, is simply a general finding. *Rhodes* v. *Selvage* (1919), 69 Ind. App. 533, 122 N. E. 352; *State ex rel. Conner* v. *Pritchard, Judge* (1944), 115 Ind. App. 55, 54 N. E. 2d 283; *Himelstein Bros., Inc.* v. *The Texas Co.* (1955) 125 Ind. App. 448, 125 N. E. 2d 820; *Jaggers* v. *Henderson* (1953), 123 Ind. App. 325, 110 N. E. 2d 341; *Delaney* v. *Gubbins* (1914), 181 Ind. 188, 104 N. E. 13; *Singer, Administrator* v. *Tormoehlen et al.* (1898), 150 Ind. 287, 49 N. E. 1055.

It is therefore our considered opinion that the memorandum referred to by appellant is not properly in the record. This being the case, we cannot upset the general finding by the court as to the amount of recovery since there was much conflicting evidence concerning the items and amounts therein.

However, it has been held that this court should know the basis upon which matters were actually adjudicated by the trial court, and that it may look to findings made by the court, without being requested, in order to determine the meaning and effect of the trial court's decision. *Pub. Serv. Comm.* v. *Ft. Wayne U. Ry. Co.* (1953), 232 Ind. 82, 111 N. E. 2d 719; *Gavin* v. *Miller* (1944), 222 Ind. 459, 54 N. E. 2d 277.

In the memorandum which the trial court purportedly gave to appellant's attorneys, the Judge said that, although the complaint stated it was a suit on a note which had been assigned to appellant's decedent, the real action is not on the note but on an implied contract to be reimbursed for money paid. Therefore, the Judge did not allow attorney's fees or interest at the rate of 8 per cent. per annum, both of which the note called for. While we have heretofore

ruled that this memorandum may not be considered as a special finding of fact, we are able to determine from it the meaning of the trial judge's decision.

The litigation involved herein originated by reason of a promissory note which was signed by the makers in the following fashion:

"Hydraulic Steel Corp.
"B. A. Winston
"Martin Weinstein".

On the back of the note appeared the endorsements of Ben A. Winston and Martin Weinstein as individuals. The bank accepted this as an obligation of the corporation and credited its account with the loan. In our opinion, whether or not the note was signed by Winston and Weinstein in their official capacities as president and treasurer, respectively, of the corporation, or by themselves as individuals, makes no difference, for the reason that the note was paid and fully discharged when Holliday paid off the balance due to the bank in October, 1940. This is so because of the facts surrounding the transaction wherein the note was issued and accepted by the bank and the circumstances surrounding the payment of it later. There was no dispute from the evidence but that the bank would not have extended credit to Hydraulic Steel Corporation without the guaranty of Holliday. The note was accepted, the loan was made, and the guaranty was executed and delivered to the bank simultaneously. The guaranty reads as follows:

"Indianapolis, Ind. April 7, 1939

"FOR AND IN CONSIDERATION OF the credit which THE INDIANA TRUST COMPANY OF INDIANAPOLIS in Indiana, may extend to Hydraulic Steel Corp. of Indianapolis, Ind., the undersigned F. T. Holliday hereby guarantee— to said The Indiana Trust Company of Indianapolis, its

successors or assigns, the prompt payment, at maturity or any time thereafter, any and all existing indebtedness or obligations, and any and all indebtedness or obligations that may hereafter exist, according to their terms, and all extensions and renewals thereof, incurred by, growing out of, or occasioned by or through the acts of ————— in connection with ————— business done with or through said Company, whether said indebtedness or obligations shall be evidenced by promissory notes, bills of exchange, checks, drafts, open accounts, or otherwise and ————— agree to pay the same without relief from valuation or appraisement laws.

"Notice of the acceptance of this guaranty is hereby waived; provided, however, and it is understood, that ————— liability to your Company shall not exceed Twelve Thousand five hundred Dollars ($12,500.00) plus any uncollected interest or discount.

"On written notice from the undersigned to said Company to that effect ————— shall not be liable for any indebtedness or obligations thereafter incurred.

CANCELLED

" /s/   F. T. Holliday"

It will be noted that this guaranty states that F. T. Holliday guarantees the prompt "payment" at maturity of the corporation's obligations. And further he agrees "to pay" the same without relief from valuation or appraisement laws.

The contract of a surety or guarantor is to be construed like any other contract, that is, according to the intention of the parties. The intention of the parties is to be ascertained from the instrument itself read in the light of surrounding circumstances. Our courts have held that instruments of this sort should receive a liberal interpretation, which means that words should not be forced out of their natural meaning, but that they should

receive a fair and reasonable interpretation so as to attain the objects for which the instrument is designed and the purposes to which it is applied. *Hernley* v. *Brannum* (1899), 23 Ind. App. 388, 55 N. E. 512.

The language of the instrument here is that the note or other obligations and indebtedness of the corporation will be paid.

The word "payment" has a well-understood meaning, and in legal contemplation payment is the discharge in money or its equivalent of an obligation or debt owing by one person to another. *Morris* v. *Reyman* (1913), 55 Ind. App. 112, 103 N. E. 423.

The Negotiable Instrument Law states that a negotiable instrument is *discharged* by payment in due course by or on *behalf of* the principal debtor. Burns' Ind. Stat. (1950 Replacement), §19-801 (1).

Our Supreme Court held many years ago that where a son promised to see that a note was paid at his father's request and subsequently made full payment on it by installments, the credits against the note were considered as payments. The court made this statement:

> "The only relation which the payment, by James Russell, jr., created between him and his father, was that of an assumpsit for money paid to his use. The simple answer to this action is, *the note is paid.*" (Our emphasis.) *Russell* v. *Drummond* (1855), 6 Ind. 216, 219.

In *Binford, Administrator* v. *Adams, Administrator, et al.* (1885), 104 Ind. 41, 43, 3 N. E. 753, 754, the Supreme Court stated: "Payment is the discharge of a debt."

Appellant very forcibly argues that the payment to the bank by Holliday of the balance due on the note was not payment such as to discharge the note, but rather was payment in purchase of the note, and therefore as such the note remained alive for future enforcement against the makers by the holder thereof.

In *Binford, Administrator* v. *Adams, Administrator, et al., supra,* the court said:

"Whether a transaction between the holder of a promissory note and the person who pays the money is of such a character as to constitute a payment that will operate to extinguish the debt, is generally a question of fact."

The court goes on to discuss the important difference between the payment of a note and the purchase of it. Payment is a discharge of the debt, while purchase is a contract of sale. The court says further:

"The sale of a note, in order to be valid, must be made by a buyer to a seller; there must be mutual assent, and there must also be a consideration. Daniel says: 'Payment is not a contract. It is the discharge of a contract in which the party of the first part has a right to demand payment, and the party of the second part has a right to make payment. A sale is altogether different. It is a contract which does not extinguish a bill or note, but continues it in circulation as a valid security against all parties. And it is necessary to constitute a transaction a sale that both parties should then expressly or impliedly agree, the one to sell, and the other to purchase the paper.' 2 Daniel Negotiable Inst., section 1221."

The court further cites with approval the case of *Moran* v. *Abbey* (1883), 63 Cal. 56, 61, where the court said (page 44 of 104 Ind., pages 754, 755 of 3 N. E.):

" 'Any one of the several parties to a joint contract, or any one in his behalf and at his request, or with his consent, may perform the obligation; and when performance has been offered or made, and the money accepted, the obligation becomes extinguished. The parties to the contract are no longer bound to each other by the *vinculum legis* of right and duty.' "

The undisputed evidence shows that when Winston and Weinstein failed to pay the note upon maturity, Holliday, being a person of high integrity and a man of his word, went to the bank and paid the balance due, plus interest, as soon as his attention was called to the default. The bank accepted his checks and marked the ledger card of the corporation so as to show the indebtedness as paid and finally satisfied. These actions, plus the language regarding payment used in the contract of guaranty, all clearly indicate that the intention of these parties was such that they mutually considered the debt paid and the obligation cancelled.

Appellant cites the case of *Josselyn et al.* v. *Edwards* (1877), 57 Ind. 212. In that case Edwards purchased certain real estate from Thompson and gave back a purchase-money mortgage plus four promissory notes calling for payment of interest and attorney's fees. Edwards later sold the property to the Josselyns, conveying the same by a deed stipulating that the Josselyns assumed and agreed to pay the notes and mortgage in accordance with the terms thereof. Here was an express agreement and promise to pay the full amount of the promissory notes according to the terms thereof which included interest and attorney's fees. This is a customary provision in the sale of mortgaged property, where the vendee not only takes the premises subject to the mort-

gage indebtedness, but agrees to pay it by assuming it. When the vendee fails to make payment to the mortgagee, he is not only liable to the mortgagee upon the note and mortgage by reason of his special contract with the vendor, but he is also liable to the vendor who pays the mortgagee in full for the same reason, that is, his special contract with the vendor. The court in the *Josselyn* case correctly held that when the vendor paid the debt owing to the mortgagee he became subrogated to the mortgagee's rights and was entitled to whatever rights against the vendee that the mortgagee had if the vendor had not paid the indebtedness, including the note according to its terms. There is no special agreement or express promise by the corporation here to pay Holliday as guarantor of the note according to its terms in the event he paid the bank.

In this case the right of subrogation by the guarantor is one of indemnity only and rests upon an implied promise on the part of the corporation as principal, and the guarantor is not entitled to recover a greater amount than he has paid for the corporation. *Smith* v. *Wells* (1919), 72 Ind. App. 29, 122 N. E. 334, 123 N. E. 644. The *Josselyn* case therefore is distinguished from the one at bar.

Since this case involves the discharge of a note and the extinguishment of a debt, the only recovery permitted the appellant's decedent is on the basis that the law raised an implied promise on the part of the corporation to reimburse the guarantor, and on payment of the debt the guarantor at once had a right of action against the corporation as principal for reimbursement of the amount which he paid with interest thereon at the legal rate. It makes no difference that the bank assigned the note to Holliday as guar-

antor. 14 West's I. L. E., Guaranty, ch. 2, §27, p. 585; 38 C. J. S., Guaranty, §111, p. 1298.

This is the theory upon which the trial judge proceeded to render judgment, and it is well supported by the decisions of our Indiana courts.

In *Gieseke, Administrator* v. *Johnson* (1888), 115 Ind. 308, 309, 311, 17 N. E. 573, 574, our Supreme Court said on the question of whether a surety was entitled to recover attorney's fees:

> "We are satisfied that he not. One sufficient reason why he is not is, that he is entitled to recover the amount paid to the bank, with interest, ■ and no more. His right of action is for indemnity only, and rests upon an implied promise on the part of the principal. Hence it is that a surety can not maintain an action against his principal until he has paid something, and then only for the amount paid, with interest. In this State the rate of such interest is regulated by statute.
>
> . . .
>
> "The action by appellee, the surety, against ■ the principal maker, is not upon the note, but upon the implied promise of indemnity."

In the case of *Smith* v. *Wells, supra* (pages 42, 43 of 72 Ind. App., page 338 of 122 N. E.), this court adopted the same position:

> "It has been held that the right of subrogation is one of indemnity only, and rests on an implied promise on the part of the principal; and that, where such right arises by reason of suretyship, the surety is not entitled to recover a greater amount than he has paid for his principal. . . . In this case the special finding of facts does not disclose that any amount was paid as an attorney's fee by or on behalf of . . . (surety) in the payment of the debt secured by the mortgage in question, and hence no amount on that account should be included in any recovery by said appellee (surety)."

To the same effect are *Goodwin* v. *Davis* (1896), 15 Ind. App. 120, 43 N. E. 881; *Runkle* v. *Pullin* (1912), 49 Ind. App. 619, 97 N. E. 956; *Coffinberry* v. *McClellan* (1905), 164 Ind. 131, 73 N. E. 97; *Campbell* v. *Tomlinson* (1912), 178 Ind. 63, 98 N. E. 720; *Christian* v. *Highlands* (1903), 32 Ind. App. 104, 69 N. E. 266; and *Conklin* v. *School City of South Bend* (1920), 73 Ind. App. 25, 124 N. E. 464.

Appellant relies heavily on the case of *Fox* v. *Kroeger* (1931), 119 Tex. 511, 35 S. W. 2d 679, as authority for its position. A careful reading of that case reveals that the Supreme Court of Texas in a long line of conflicting opinions first ruled that payment of a note by a surety extinguished the obligation so that the surety's right was based upon an implied promise to reimburse. Later the court reversed itself and ruled that the surety was entitled to maintain an action on the debt itself. Subsequently the court again reversed itself and went back to the old rule. The opinion in this case finally compromised all previous holdings by the court and announced that the rule in Texas would be that a surety has his election to either bring an action in assumpsit on an implied promise or prosecute an action on the very debt itself, being subrogated to the rights of the debtor in either case. We think the rule applied by the courts of Indiana has been consistent, and the Texas case is therefore no authority herein.

In view of the factual situation developed by the evidence in this case, it would appear that the trial court adhered to the proper theory in arriving at its conclusion. However, it would also seem that the evidence failed to afford facts to which said theory could be applied. The evidence demonstrates that the implied contract to reimburse appel-

lant's decedent for his expenditure was that of the *corporation,* and not of Winston and Weinstein individually, appellees herein. The corporation was not made a party to the action. Therefore it would seem logical and legally correct to say that the accuracy of the judgment against appellees, if such question had been presented to us, would be open to serious doubt. Appellees did not appeal from the judgment rendered against them, nor did they assign cross-errors in this appeal. They have expressed themselves as content with the judgment below and have asked this court to affirm it. The judgment then as to them must remain as a final adjudication.

Appellant has not shown error by the record, and we see no reason for disturbing the judgment appealed from.

Judgment affirmed.

Ryan and Smith, JJ., not participating.

Gonas, C. J., and Ax, Bierly, Cooper and Kelley, JJ., concur.

NOTE.—Reported in 159 N. E. 2d 296.