**CARGILL, INCORPORATED,**
Plaintiff-Appellee,
Cross-Appellant,

v.

**Lloyd BUIS and Rose M. Buis,** Defendants-Appellants, Cross-Appellees.

Nos. 76–1212, 76–1213.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 21, 1976.

Decided Oct. 20, 1976.

Thomas D. Titsworth, John Wood, Indianapolis, Ind., for Cargill.

Marshall E. Williams, Indianapolis, Ind., for Buis.

Before HASTINGS, Senior Circuit Judge, and PELL and WOOD, Circuit Judges.

HASTINGS, Senior Circuit Judge.

We are concerned here with the extent of coverage of indebtedness by separate Letters of Guaranty signed by defendants, Lloyd Buis and Rose M. Buis, his wife. A subsidiary question raised on cross-appeal is the denial of attorneys' fees to plaintiff's attorneys.

The case was tried to the federal district court,[1] without the intervention of a jury, upon a written joint submission of the parties for final determination, based upon a stipulation of facts, documents and issues, together with other matters set out therein.

The court found as a matter of law that plaintiff was entitled to recover from defendants on the Letters of Guaranty, the net amount of $22,955.49, plus certain specified interest thereon. Judgment was rendered in favor of the plaintiff against the defendants. Defendants appealed. No. 76–1212 herein.

Plaintiff requested attorneys' fees in the stipulated amount of $8,026.52, which were denied by the court, and from which denial plaintiff has cross-appealed. No. 76–1213 herein.

## I.

Plaintiff Cargill, Incorporated (Cargill), is a Minnesota corporation with its principal place of business at Minneapolis, Minnesota. In late December 1973, Hales & Hunter Co. (Hales), an Illinois corporation, assigned all of its assets to plaintiff Cargill and was merged with Cargill. Cargill succeeded to all rights and claims of Hales against the later described principal debtor and under the Letters of Guaranty. However, Hales was in fact the moving plaintiff in this

---

1. The United States District Court for the Southern District of Indiana, the Honorable S. Hugh Dillin, Judge, presiding.

action in the transactions which took place. Accordingly, references to the plaintiff herein will be to Hales.

Defendants Lloyd Buis and Rose M. Buis are husband and wife, citizens of Indiana, and residents of Greencastle, Indiana. From 1952 to September 1962, defendant Lloyd Buis conducted a rural retail feed dealership at Belle Union, Indiana. His business substantially expanded. On September 9, 1960, the business was incorporated as Lloyd Buis & Sons, Inc. (Buis, Inc.). From that time until April 5, 1965, defendant Lloyd Buis owned all of the outstanding common capital stock of the corporation, except one share owned by his wife, defendant Rose M. Buis, and one share owned by his father.

In the meantime, on August 8, 1963, plaintiff and Buis, Inc. entered into a franchise agreement under which Buis, Inc. was designated as a dealer to distribute plaintiff's products under its Pioneer label. Shortly thereafter, on August 15, 1963, plaintiff made Buis, Inc. a working capital loan of $140,000, evidenced by a promissory note in favor of plaintiff. At the same time, plaintiff further agreed to furnish Buis, Inc. concentrates on an open account basis.

Also, on August 15, 1963, defendants executed the separate Letters of Guaranty in question.

## II.

Each of the Letters of Guaranty was prepared by plaintiff on its own forms. They provided that defendants each guaranteed the payment of all "indebtedness whether in the form of notes, bills or open account, hereinafter incurred by the Debtor in connection with the sale of goods by the Company to the Debtor, or otherwise." Buis, Inc. was designated as the "Debtor" and plaintiff Hales as the "Company."

The Letters of Guaranty further stated that they "shall be continuing and shall remain in full force and effect until all such indebtedness shall be fully paid; provided, that upon written notice from the Guarantor to the Company to that effect the Guar-

antor shall not be liable for any indebtedness of the Debtor incurred after receipt by the Company of such notice." No such written notice of termination was ever given by the Guarantor.

It is undisputed that all indebtedness incurred by Buis, Inc. "in connection with the sale of goods" by plaintiff to Buis, Inc. was paid and is not in issue.

## III.

On April 5, 1965, King Porkers Enterprises, Inc. (King Porkers), an Indiana corporation, was merged into Buis, Inc. pursuant to the Indiana Code § 23–1–5–5, with Buis, Inc. as the surviving corporation. The corporate name was changed to National Food Producers, Inc. (National Food). Under paragraph (e) of this code section it is provided: "(e) Such single corporation shall thenceforth be responsible and liable for all the liabilities and obligations of each of the corporations so merged or consolidated in the same manner and to the same extent as if such single corporation had itself incurred the same or contracted therefor * * *."

On April 28, 1965, the open account existing between plaintiff and Buis, Inc. had a ledger balance of $57,121.01. This balance was transferred by plaintiff to a new ledger account designated National Food Producers, Inc. (National Food) on May 10, 1965. Plaintiff approved a new line of credit of $60,000 to National Food.

On August 15, 1966, National Food executed and delivered to plaintiff an assignment of its accounts receivable. At the same time, plaintiff accepted the promissory note of National Food in the sum of $74,705.09, payable in installments, in settlement of the balance due on the original principal sum of $140,000 owing by Buis, Inc. to plaintiff. On November 2, 1966, plaintiff accepted another promissory note from National Food in the sum of $41,-195.93, representing past due invoices on open account purchases. In October 1967, National Food obtained outside financing and paid in full the foregoing August 15,

1966 and November 2, 1966, promissory notes.

## IV.

National Food continued to experience financial difficulties and on January 31, 1969, was adjudicated bankrupt by the district court. On January 3, 1969, the date of bankruptcy, National Food was indebted to plaintiff *for goods sold on an open account basis* in the amount of $28,510.77. The district court approved an order allowing the secured claim of plaintiff in the amount of $28,510.77, including interest, and with additional interest to be computed thereafter.

On September 15, 1972, the trustee in bankruptcy paid plaintiff the sum of $14,843.25, in partial satisfaction of the allowed secured claim, and subsequently paid the additional sum of $1,078.50 as interest thereon.

## V.

A guaranty has been defined as being a collateral promise or undertaking by one person to answer for the payment of some debt or the performance of some duty (in case of default) of another person liable therefor in the first instance. 14 Indiana Law Encyclopedia, *Guaranty*, § 2, p. 568.

The instant Letters of Guaranty have been specifically denominated as continuing in nature. A continuing guaranty has been said to be one which is not limited to a single transaction, but which contemplates a future course of dealing, covering a series of transactions, generally for an indefinite period or until revocation. Unless the words in which the guaranty is expressed fairly imply that the liability of the guarantor is to be limited, the guaranty will be regarded as continuing until it is revoked. 14 Indiana Law Encyclopedia, *Guaranty*, § 23, p. 581. *Wright v. Griffith*, 121 Ind. 478, 482, 23 N.E. 281, 282 (1890).

A Letter of Guaranty is a contract and is to be construed, like other contracts, according to the intention of the parties, as ascertained from the instrument itself, in light of the surrounding circumstances at the time it was executed. It should receive a liberal interpretation, which is to say that its words should not be forced out of their natural meaning, but should receive a fair and reasonable interpretation so as to attain the objects for which the instrument is designed and the purposes for which it is applied. *Merchants National Bank & Trust Co. v. Winston*, 129 Ind.App. 588, 600, 159 N.E.2d 296, 302 (In Banc, 1959).

The first issue on this appeal is whether the Letters of Guaranty survived the corporate merger of Buis, Inc. and King Porkers. Defendants' interests in the merged corporation, National Food, is critical to the determination of this question. Our analysis of this question reveals the following situation.

The surviving corporation Buis, Inc. changed its name to National Food Producers, Inc. (National Food). National Food became a publicly held corporation rather than a privately held family corporation. However, the majority of its shares were, nonetheless, held by defendant Lloyd Buis. The corporation was governed by an eleven man board of directors, four of which were nominated by Lloyd Buis. The day to day management of the corporation was handled by a special three man executive committee. The nature of the corporate business remained the same. Defendant Lloyd Buis was named president and given the right to name the executive vice president. He was given a three-year employment contract at $20,000 per year, plus 10 per cent of the surviving corporation's net profits *before* taxes each year, plus a stock option. Plaintiff continued to sell its products to the surviving corporation on an open account basis, all to the personal gain of Lloyd Buis. Plaintiff was advised of all these matters.

It becomes clear that plaintiff demanded the Letters of Guaranty as additional security for the debts of Buis, Inc., fully recognizing it for what it was, a closely held family corporation and the *alter ego* of the Buis family.

We have concluded, as did the district judge, that the changes made in the merger with King Porkers and the defendants' subsequent interest in National Food did not materially affect the continuing liability of defendants and the validity of the Letters of Guaranty, which continued in full force and effect.

■ Upon reaching this final conclusion, as a matter of law, our recent holding in *Essex International, Inc. v. Clamage*, 7 Cir., 440 F.2d 547, 550–551 (1971), is dispositive of the question that a mere change of form does not terminate a guaranty, absent a change of liabilities.

We held in *Union Carbide Corp. v. Katz*, 489 F.2d 1374, 1377 (1973), that a request for the execution of a new guaranty with somewhat different terms did not, by operation of law, repudiate or reject or establish nonreliance upon the offer of guaranty previously executed. We find no merit in a claim to the contrary. *Accord, Clamage*, 440 F.2d at 551.

Consistent with the foregoing, we hold that the judgment of the district court on this issue be, and the same is hereby, affirmed.

## VI.

■ We have carefully considered plaintiff's claim for attorneys' fees in the stipulated amount of $8,026.52. No provision appears in the Letters of Guaranty for attorneys' fees. Absent clear language to the contrary, we have concluded, as did the district court, that such fees should not be allowed.

The judgment of the district court denying plaintiff's claim for attorneys' fees is affirmed.

Affirmed.