

**FILED**
Mar 20 2015, 10:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

John D. Ladue
Erin Linder Hanig
LaDue, Curran & Kuehn, LLC
South Bend, Indiana

Ronald L. Marmer
Marmer Law Offices, LLC
Chicago, Illinois

ATTORNEYS FOR APPELLEE

James F. Groves
Lee, Groves & Zalas
South Bend, Indiana

Elkan Abramowitz
Thomas M. Keane
Daniel F. Wachtell
Morvillo, Abramowitz, Grand Iason &
Anello, P.C.
New York, New York

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| AM General, LLC,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>James A. Armour,<br>*Appellee-Defendant.* | March 20, 2015<br><br>Court of Appeals Case No.<br>71A03-1402-PL-58<br><br>Appeal from the St. Joseph Superior<br>Court; The Honorable Margot F.<br>Reagan, Judge;<br>71D04-1212-PL-279 |

**May, Judge.**

AM General LLC appeals summary judgment for James A. Armour. As AM General designated evidence to refute Armour's contentions in its response to Armour's motion for summary judgment, the summary judgment was in error. We reverse and remand for trial.

## Facts and Procedural History

The undisputed facts of this case, as iterated by the trial court, are:

> Mr. Armour is the former President, CEO and Chairman of AM General. He retired on or about January 2, 2012. From 2007 until his retirement, Armour had worked for AM General pursuant to a written Employment Agreement, entered into as of November 14, 2007.
>
> The Employment Agreement provides that AM General must "pay" Armour: (i) an annual salary; (ii) an annual bonus; and (iii) LTIP [Long-Term Incentive Payment] payments calculated according to a method set forth in Schedule A to the Employment Agreement. There is no dispute that the total amount of the LTIP payments yet owed to Armour under the Employment Agreement is $[redacted].
>
> The LTIP provisions of the Employment Agreement further provide that the LTIP payment to Armour would be made "at the time bonus payments under Section 2(a)(ii) are paid to other employees of [AM General] with respect to the Employer's 2011 fiscal year." Armour was paid his annual bonus under Section 2(a)(ii) of the Employment Agreement for AM General's 2011 fiscal year on or about January 20, 2012. According to AM General officers, other AM General employees also received their 2011 bonuses on or about January 20, 2012.
>
> Rather than pay Armour the LTIP payment at the time fiscal year 2011 bonuses were paid, AM General began paying him cash over three payments. During 2012, AM General paid Armour a total of $[redacted] of the $[redacted] due to him pursuant to the LTIP provisions of the Employment Agreement. Specifically, AM General paid Armour: $[redacted] (less taxes) by check dated March 14, 2012; $[redacted] (less taxes) by check dated May 15, 2012; and $[redacted] (less taxes) by check dated August 15, 2012. These payments were

identified as LTIP payments on the Earnings Statements accompanying the checks and in a reconciliation statement provided to Armour by the AM General human resources department. The difference between the $[redacted] due to Armour pursuant to the LTIP provisions of the Employment Agreement and the $[redacted] paid to him pursuant to the LTIP provisions of the Employment Agreement is $[redacted].

On or about December 14, 2012, Barry Schwartz, the Vice Chairman of [sic] the managing member of AM General's parent company, sent Armour a Promissory Note ("Note") from AM General, which Mr. Schwartz stated was "in satisfaction of remaining amounts owed to you under your November 2007 Employment Agreement." The Note stated that it was intended to reflect "all amounts due and payable to the Holder [Mr. Armour] pursuant to that certain Employment Agreement . . . dated as of November 14, 2007, between the Company [AM General] and the Holder, which is the gross amount of $[redacted] less $[redacted] in respect of applicable taxes and withholdings." The Note was signed by AM General's Assistant Treasurer.

Although it stated that the gross amount "due and payable" to Armour, as of December 14, 2012, was $[redacted], the Note contained many provisions that were inconsistent with AM General's obligation under the Employment Agreement to "pay" Armour. For example, the principal amount of the Note was not payable until December 14, 2015 which was more than three years after the full amount of the $[redacted] LTIP payment to Armour had come due. In addition the Note was unsecured and was expressly subordinated to certain substantial bank debt (the "Bank Debt") owed by AM General. As a result, the Note would not be payable in the event that AM General was in default on the Bank Debt and actually required that any money that might have been paid to Armour pursuant to the Note to [be] turned over to AM General's creditors in the event that AM General defaulted on the Bank Debt after any payments had been made to Armour. Moreover, the Note could not be transferred prior to January 1, 2013, could be transferred thereafter only upon notice to AM General, purported to void any transfer made without notice to AM General, and required the Holder (apparently including any transferee) to acknowledge the existence and effect of unrelated security agreements between AM General and its creditors.

The Note stated that, Armour, "in accepting delivery of this Note, acknowledges that delivery of this Note satisfies all obligations of [AM General] under Section 2(a)(iii) [the LTIP payment provision] of the Employer Agreement." Armour refused to accept the Note. Instead, through counsel, Armour rejected the Note and informed AM General that its failure to tender the full amount due under the LTIP by March 31, 2012, in cash, constituted a breach of the 2007 Agreement. Through his counsel, Mr. Armour demanded immediate payment of the outstanding amount owed to him under the LTIP. On December 21, 2012, Mr. Armour's counsel returned the original Note to Mr. Schwartz.

On December 24, 2012, AM General commenced this action by filing a Complaint seeking declaratory judgment that its tender of the Note did not breach its obligations to pay Armour under the LTIP portions of the Employment Agreement. On February 27, 2013, Armour filed his Answer and Counterclaims, asserting that AM General's tender of the Note breached its obligation to pay him under the LTIP portions of the Employment Agreement.

(App. at 2-5) (redactions in original).

[3] On April 19, 2013, AM General filed an amended complaint for the public record excluding confidential financial information. On April 25, Armour filed a motion for summary judgment. On May 9, Armour answered the amended complaint and filed a counterclaim and demand for a jury trial. On May 28, AM General replied to Armour's motion for summary judgment, designating the affidavit of its Vice President of Human Resources, Gary Wuslich, as evidence to contradict Armour's claim there was no genuine issue of material fact. On June 5, AM General filed its reply and affirmative defenses to Armour's counterclaim. Armour replied to AM General's response to Armour's motion for summary judgment.

After a hearing, the trial court granted summary judgment for Armour, finding 1) AM General breached the Employment Agreement when it did not make the LTIP payment in cash, and 2) the promissory note was not a cash equivalent. The trial court awarded Armour pre-judgment interest starting on January 20, 2012. The parties disputed the amount of pre-judgment interest due and award of attorney's fees, and after a hearing on those matters the trial court affirmed its summary judgment for Armour and indicated the amount of pre-judgment interest due.

## Discussion and Decision

We review summary judgment *de novo*, applying the same standard as the trial court. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Drawing all reasonable inferences in favor of the non-moving party, we will find summary judgment appropriate if the designated evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences. *Id.*

The initial burden is on the summary-judgment movant to demonstrate there is no genuine issue of fact as to a determinative issue, at which point the burden shifts to the non-movant to come forward with evidence showing there is an issue for the trier of fact. *Id.* While the non-moving party has the burden on

appeal of persuading us a summary judgment was erroneous, we carefully assess the trial court's decision to ensure the non-movant was not improperly denied his day in court. *Id.*

[7] Our summary judgment policies aim to protect a party's day in court. *Id.* While federal practice permits the moving party to merely show that the party carrying the burden of proof *lacks* evidence on a necessary element, we impose a more onerous burden -- to affirmatively negate an opponent's claim. *Id.* That permits summary judgment to "be precluded by as little as a non-movant's 'mere designation of a self-serving affidavit.'" *Id.* (quoting *Deuitch v. Fleming,* 746 N.E.2d 993, 1000 (Ind. Ct. App. 2001), *trans. denied*). Summary judgment is not a summary trial, and it is not appropriate just because the non-movant appears unlikely to prevail at trial. *Id.* at 1003-04. We "consciously err[] on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Id.* at 1004.

[8] In its memorandum in opposition to summary judgment, AM General argued there was a "genuine issue of material fact, including whether the promissory note tendered to Mr. Armour met the criteria for when an assignable promissory note is the equivalent of cash." (App. at 219.)[1] In support of its

---

[1] The dissent contends there exists no genuine issue of material fact because the Note does not conform to the legal definition of "payment" found in Indiana precedent. The dissent relies on *Merchants Nat'l Bank & Trust Co. v. Winston*, 129 Ind. App. 588, 159 N.E.2d 296, 302 (1959), in which we held, "in legal contemplation payment is the discharge of money *or its equivalent* of an obligation or debt owing by one person to another." (Emphasis supplied.) Part of AM General's argument in response to Archer's motion for summary judgment examines whether the Note constitutes payment as a cash equivalent. As that issue requires not only the

argument, AM General designated an affidavit from Gary L. Wuslich, the Vice President of Human Resources for AM General, in which Wuslich indicated: "Unlike salary, which the Employment Agreement required to be paid in accordance with AM General's usual executive payroll payment procedures, and unlike bonus payments, which the contract expressly stated must be paid in cash, the contract did not address the issue of how LTIP payments were to be made." (*Id*. at 224.) Wuslich's affidavit was accompanied by copies of the employment contract, amendments to the employment contract and correspondence from Armour's attorney.

[9] Under *Hughley*, the designation of an affidavit offering an alternate version of the facts of the case is sufficient to defeat summary judgment. *See Hughley*, 15 N.E.3d at 1003 (Hughley's affidavit controverted State's *prima facie* case and thus summary judgment was improper). Therefore, summary judgment in favor of Armour was improperly granted, and we reverse and remand for proceedings consistent with this opinion.

[10] Reversed and remanded.

Friedlander, J., concurs. Vaidik, C.J., dissents with opinion.

---

examination of the relevant law, but also the facts surrounding the conception and interpretation of the Employment and Redemption Agreements, summary judgment was improper.

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| AM General, LLC,<br>*Appellant-Defendant,*<br><br>v.<br><br>James A. Armour,<br>*Appellee-Plaintiff.* | March 20, 2105<br><br>Court of Appeals Case No.<br>71A03-1402-PL-58<br><br>Appeal from the St. Joseph Superior<br>Court; The Honorable Margot F.<br>Reagan, Judge;<br><br>Case No. 71D04-1212-PL-279 |

**Vaidik, Chief Judge, dissenting.**

I respectfully dissent from the majority's decision to reverse the entry of summary judgment in favor of James A. Armour and to remand this case for trial. Because a promissory note is not a payment absent an express agreement to that effect and there is no express agreement here, I believe that AM General's promissory note to Armour is not a payment pursuant to the Employment Agreement. I would therefore affirm summary judgment in favor of Armour.

Armour was the President, CEO, and Chairman of AM General in South Bend, Indiana. He retired in January 2012. According to Armour's Employment Agreement with AM General, which was entered into on November 14, 2007, AM General had to "pay" Armour three types of compensation: (1) an annual salary; (2) an annual bonus; and (3) a long-term-incentive-plan ("LTIP")

payment that was calculated according to Schedule A of the Employment Agreement.[2] Appellant's App. p. 140-142, 150-152.

[13] There is no dispute that Armour's salary and bonus were to be paid in cash. According to the Employment Agreement, Armour's salary was to be paid "periodically in accordance with [AM General's] usual executive payroll payment procedures" while his bonus was to be paid "in cash." *Id.* at 141. The LTIP provisions, however, did not specify how such "payment" was to be made. *Id.* at 150-51.

[14] The LTIP provisions of the Employment Agreement did specify, however, the timing of such payment. That is, the LTIP payment to Armour had to be made "at the time bonus payments under Section 2(a)(ii) [the section of the Employment Agreement addressing annual bonuses] are paid to other employees of [AM General] with respect to the Employer's 2011 fiscal year." *Id.* at 151. Armour and other AM General employees were paid their annual bonuses for AM General's 2011 fiscal year on or about January 20, 2012. *Id.* at 186.

---

[2] A second agreement, called a Redemption Agreement, was also entered into on November 14, 2007. *See* Appellant's App. p. 249. The Redemption Agreement covered three years only: 2007, 2008, and 2009. In addition, the Redemption Agreement covered three entities on one side—MacAndrews & Forbes Holdings Inc., MacAndrews AMG Holdings LLC, and The Renco Group, Inc.—and seven "profits members" on the other side, including Armour. *Id.* at 260-61. According to the Redemption Agreement, redemption payments could be made by a "subordinated promissory note" if the company was "unable to make any payment when due." *Id.* at 252.

[15] But rather than pay Armour the entire LTIP payment when it was due—that is, when the 2011 fiscal-year bonuses were paid on January 20, 2012—AM General made three payments to Armour by check (March, May, and August 2012) that satisfied about 61.5% of what Armour was owed pursuant to the LTIP provisions of the Employment Agreement. *Id.* at 155-157.

[16] Then, on December 14, 2012, nearly a year after Armour's LTIP payment should have been paid, AM General sent Armour a promissory note ("the Note") "in satisfaction of [the] remaining amounts owed to [him] under [his] November 2007 Employment Agreement with AM General." *Id.* at 159. AM General claimed it was "in the best interest of AM General LLC" to do it this way. *Id.* According to the Note, the principal amount was not payable until December 14, 2015—nearly four years after it should have been paid. *Id.* at 162. The Note was unsecured and subordinated to substantial bank debt that AM General owed. *Id.* And although the Note could be transferred, it could be transferred only under certain conditions. *Id.* at 163-64. Finally, the Note stated that Armour's acceptance of the Note "satisfie[d] all obligations of [AM General] under Section 2(a)(iii) [the LTIP provision] of the Employment Agreement." *Id.* at 161.

[17] Armour refused to accept the Note. Instead, he informed AM General that its failure to timely tender the full amount of the Note, in cash, constituted a breach of the 2007 Employment Agreement. Armour demanded immediate payment of the outstanding amount and returned the Note to AM General. In response, AM General filed a complaint seeking a declaratory judgment that its

tender of the Note "satisfied AM General's obligations under the employment agreement and was in the best interests of AM General." *Id.* at 110.

[18]  Armour filed a motion for summary judgment. After a hearing, the trial court entered summary judgment in Armour's favor, finding that (1) AM General breached the Employment Agreement by failing to timely pay Armour the LTIP payment, in cash, and (2) the promissory note was "clearly" not a cash equivalent. *Id.* at 7, 10.

[19]  The majority, however, finds that summary judgment in Armour's favor is inappropriate because AM General "offer[ed] an alternate version of the facts of th[is] case" and there is, therefore, a genuine issue of material fact. Slip op. at 7. That is, AM General designated an affidavit from its Vice President of Human Resources in which the vice president averred: "Unlike salary, which the Employment Agreement required to be paid in accordance with AM General's usual executive payroll payment procedures, and unlike bonus payments, which the contract expressly stated must be paid in cash, the contract did not address the issue of how LTIP payments were to be made." Appellant's App. p. 224.

[20]  But this does not create a genuine issue of material fact. As a matter of law, it makes no difference that the Employment Agreement does not specify how the LTIP payment was to be made. This is because "payment" has a distinct meaning, and AM General's Note to Armour does not qualify as a "payment." The word "payment" has a well-understood meaning, and "in legal

contemplation payment is the discharge in money or its equivalent of an obligation or debt owing by one person to another." *Merchants Nat'l Bank & Trust Co. v. Winston*, 129 Ind. App. 588, 159 N.E.2d 296, 302 (1959); *see also The Kimball*, 70 U.S. 37, 45-46 (1865) ("That a mere promise to pay cannot of itself be regarded as an effective payment is manifest."). In addition:

> The general rule, in the absence of a contrary agreement, is that an obligor's note does not discharge the obligation for which it is given, whether the obligation is a preexisting indebtedness or one that is contemporaneous in nature. On the ground that a mere promise to pay cannot of itself be regarded as an effective payment, tender of a promissory note represents only a conditional payment, the delivery of which will be deemed as discharging the underlying debt only if the parties thereto so intend. *Absent some express agreement or compelling circumstances which clearly indicate a contrary intention of the parties, promissory notes are not payment for a debt incurred until themselves paid*.

60 Am. Jur. 2d *Payment* § 41 (2014) (emphasis added, footnotes omitted). Because a promissory note is not a payment absent an express agreement and there is no express agreement here, I agree with the trial court that the Note is not a payment pursuant to the Employment Agreement. I would therefore affirm summary judgment in favor of Armour.

[21] To the extent AM General argues that the Employment Agreement and the Redemption Agreement should be construed together to reach the conclusion that the LTIP payment could also have been made by a promissory note, this argument is a non-starter. First, the Employment Agreement provides: "There are no oral or written understandings concerning the Employee's employment outside of this Agreement (other than the Net Worth Participation Agreement between Employee and Employer)." Appellant's App. p. 149. Second, neither

agreement references each other. Finally, the Redemption Agreement is an amendment to an LLC's operating agreement involving numerous parties and concerns a buyout of Armour's profit interest in an LLC by an entity distinct from AM General. *See id.* at 249-67. Simply put, these agreements were not part of the same transaction and should not be construed together.

[22] Contrary to the majority's position, the fact that the Employment Agreement does not specify how the LTIP payment was to be made is not an issue of fact. In fact, neither party disputes it. Rather, it is a question of law. And because a promissory note is not a payment absent an express agreement to that effect and there is no express agreement here, AM General's Note to Armour is not a payment pursuant to the Employment Agreement. I would therefore affirm summary judgment in favor of Armour.