## Smith v. Wells.

[No. 9,653. Filed March 6, 1919. Rehearing denied June 19, 1919. Transfer denied December 19, 1919.]

1. APPEAL.—*Parties.—Coparties.—Assignment. of Errors.*—In a term-time appeal, the appellant need not make any coparty, against whom the judgment was rendered, a party to the appeal, since under §675 Burns 1914, Acts 1895 p. 179, any such coparty is entitled to become a party by assigning errors for himself. p. 37.

2. APPEAL.—*Coparties.—Who Are.*—Where a decree was for the plaintiff to whose complaint the appellant and a trust company were defendants and were not adverse parties to any other pleading, and where such decree was to the effect that the plaintiff had an interest in the real estate in question superior to any title or interest claimed by the appellant or the trust company, and did not purport to determine any issue as between them, such defendants were coparties within the meaning of §675 Burns 1914, Acts 1895 p. 179. p. 38.

3. CONTRACTS.—*Construction.—Language.— Presumptions.* — Every word and clause in a contract should, if possible, be assigned a meaning, since it will not be presumed that idle provisions have been wilfully inserted. p. 38.

4. SUBROGATION.—*Insurance.—Mortgages.—Beneficiaries. — Changes in Rights by Contract.—Effect.*—Where an insured, his mortgagee and his insurer, made a contract whereby, to further secure a loan, in security of which insured had given a mortgage upon his real estate, the insured pledged his insurance to the extent necessary, and designated an officer of the insurer as beneficiary to collect the insurance, pay the mortgage debt and pay any balance of the insurance to his beneficiaries theretofore named, and providing for a subrogation in favor of such former beneficiaries to the mortgage lien in case the insurance money was used to pay the mortgage debt, such provision for subrogation will be given effect and a foreclosure had to reimburse one of the beneficiaries of the insured for the amount due him by reason of the application of a part of the proceeds of the insurance to the payment of the loan. p. 38.

5. SUBROGATION.—*Rights of Mortgagee.—Attorney's Fees.*—Where a beneficiary under an insurance contract, the proceeds of which were in part used to discharge the insured's mortgage debt, was subrogated to the rights of the mortgagee, he could not, in fore-

closure proceedings, recover an attorney's fee when none had been paid by him or on his behalf in the payment of the mortgage debt, since the right of subrogation in such a case arises by reason of a suretyship, and a surety is not entitled to recover a greater amount than he has paid for his principal.    p. 42.

6.  INSURANCE.—*Beneficiaries.*—*"Wife and Children."*—*Shares.*— Where insurance is payable to insured's "wife and children," such wife and each child share equally.    p. 43.

7.  DEATH.—*Continuance of Life.*—*Presumptions.*—In an action involving rights under an insurance contract made payable to insured's wife and children, where there is no finding that any one of the beneficiaries has died, it will be presumed that all are in life.    p. 45.

8.  APPEAL.—*Reservation of Objections.*—*Waiver.*—Failing to ask the trial court to modify the judgment as being too large, does not waive that objection on appeal where the judgment was in accord with the conclusions of law stated, and error is sufficiently assigned thereon, since a motion to modify the judgment would have been unavailing.    p. 45.

9.  JUDGMENT.—*Conclusions of Law.*—*Conformity.*—Where a special finding of facts is made and conclusions of law stated thereon, it is necessary that the judgment be in accordance with such conclusions.    p. 45.

10. MORTGAGES.—*Subrogation.*—*Absentees.*—*Rights Of.*—*When Not Available to Others.*—In an action to foreclose a mortgage by a son, on the theory of subrogation to the rights of the mortgagee through a contract pledging insurance made payable to the wife and children of the insured mortgagor, where there were no other children except a brother, who was absent and was defaulted after notice by publication without any finding that he was dead, and where the widow was also the holder of the title to the real estate involved, the plaintiff cannot object that a judgment in his favor for the interest in the mortgage due him as a child, will necessarily leave an excessive interest in the mortgage · to the widow, since the findings do not preclude the possible return of the absent son nor his having the default set aside under §627 Burns 1914, §600 R. S. 1881, and procuring a decree of foreclosure for his interest, and since, in any event, the widow is not required to submit to an unwarranted judgment in favor of the plaintiff to her damage.    p. 46.

11. TRIAL.—*Finding of Amount Due.*—*Conclusion of Law.*—A finding that states the amount due plaintiff, when the facts are found from which the conclusion may be drawn, is a conclusion of law, and has no place in the finding.    p. 47.

12. TRIAL.—*Conclusions of Law in Findings.*—*Effect.*—Conclusions of law stated in the findings are not controlling and should be eliminated, as the court must state its conclusions of law from the facts found. p. 47.

From DeKalb Circuit Court; *Dan M. Link*, Judge.

Action by Wendell E. Wells against Bessie B. Smith and others. From a judgment for plaintiff, the named defendant appeals. *Reversed.*

. *P. V. Hoffman,* for appellant.

*Charles J. Brennan* and *Mountz & Brinkerhoff*, for appellees.

BATMAN, P. J.—This is an action by appellee Wendell E. Wells against appellant, the Garrett Savings Loan and Trust Company, and Germaine Wells, to foreclose a mortgage on certain real estate. Appellant and said company each filed an answer in general denial, and the appellant also filed a cross-complaint against appellee Wendell E. Wells, the Baltimore and Ohio Railroad Company and Germaine Wells, asking to have said mortgage declared satisfied, and to have her title to said real estate quieted as against said mortgage, and that said railroad company be required to account to her for certain funds. Appellees Wendell E. Wells, said railroad company and the Real Estate and Improvement Company of Baltimore City, which had subsequently become a party defendant to said cross-complaint, filed answers thereto in general denial. Appellee Germaine Wells was given notice of the pendency of this action against him by publication, as to both the complaint and cross-complaint, but, failing to appear, was defaulted. The cause was submitted to the court for trial on the issues thus formed and, on proper request, a special

finding of facts was made and conclusions of law stated thereon. The substance of so much of said special finding of facts as is necessary for an understanding of the questions determined is as follows: That on September 14, 1905, Robert S. Wells, residing at Garrett, Indiana, was in the employ of the Baltimore and Ohio Railroad Company as a freight conductor, and remained so employed until his death; that during such employment said railroad company maintained a department of its service designated as its relief department, and conducted therein a plan for the insurance of the lives of its employes; that on said date said Robert S. Wells made an application in writing for membership in said relief department, in which he agreed that the acceptance thereof by the superintendent of said department should constitute a contract between himself and the railroad company; that said application was so accepted, and, except as modified by subsequent designations of beneficiaries and assignment, as therein found, remained in force until the death of said Robert S. Wells; that said application provided, among other things, that the benefits to be derived therefrom, in the event of his death, should be paid to his "wife Elizabeth and children, and sons, Germaine and Wendell, by former marriage," or to whomsoever he should from time to time designate in writing by way of substitution, with the written consent of the superintendent of said relief department; that his marriage should *ipso facto* have the effect of substituting his wife in the place and stead of the beneficiaries named above to receive said benefits in the event of his death, if she be then living, except as to children by a former marriage, who may be named as beneficiaries, in which event his said wife

should have one-half of said benefits; that said Elizabeth Wells, named in said application as one of the beneficiaries, was the second wife of said Robert S. Wells; that said Germaine and Wendell Wells are his children by a former marriage, and the latter is the plaintiff in this action; that said Robert S. Wells had no children by his said wife, Elizabeth, and that he was divorced from her on May 21, 1906; that after being so divorced said Robert S. Wells intermarried with appellant, who was then Bessie B. Mace, and said marriage contract continued until the death of said Robert S. Wells, which occurred on April 17, 1912; that after his marriage with the said Bessie B. Mace, to wit, on October 14, 1907, he executed an instrument in writing, on a form prepared by said relief department, for the purpose of designating the beneficiaries under his said contract, which is in the following words:

"I, Robert S. Wells, of Garrett in the County of DeKalb and State of Indiana, a member of the Relief Department of the Baltimore & Ohio Railroad Company, by virtue of my principal application for membership in the Relief Feature of said Department, said application being numbered 31941, do hereby withdraw any designation of beneficiary heretofore made by me, and in lieu and stead thereof, do hereby direct that in the event of my death, any death benefit payable by virtue of my membership in said Relief Feature shall be payable to my wife, Bessie B. and my children in substitution for the beneficiary or beneficiaries heretofore named by me under said application, without otherwise affecting or chang-

ing said application or the terms thereof; this withdrawal and designation to take effect upon the 14th day of October A. D. 1907.''

That said designation of beneficiaries was approved by the superintendent of said relief department on October 21, 1907; that on June 10, 1911, said Robert S. Wells. obtained a loan of $1,081.52 from the Real Estate and Improvement Company of Baltimore, City, hereinafter called the improvement company; that to secure the same he and his said wife, Bessie B., executed the mortgage in suit to said company, and as further security therefor said Robert S. Wells executed to the company a certain instrument in writing, as an assignment thereto of a sufficient amount of the benefits that would be due to his beneficiaries from said relief department in the event of his death, to pay the balance of the debt created by said loan; that the superintendent of the relief department and said improvement company joined said Wells in the execution of said written agreement, which recited in substance, among other things, that the improvement company had loaned said Wells $1,081.52 upon property owned by him; that it was a condition precedent to the making of said loan that said Wells should provide life insurance for the payment thereof, in the event of his death; that the proceeds of the insurance contract in question was to be pledged for that purpose, but that his children, who were named as beneficiaries therein, were minors, and by reason of that fact were unable to assign their beneficiary interest in. order to secure a loan; that it was therefore necessary to change the beneficiary to whom the benefits thereof should be paid, in order to comply with the conditions on which the loan was

granted; that the superintendent of said relief department was thereby designated by way of substitution as the person to whom the benefits of said insurance contract should be paid, in order to pay any indebtedness to said improvement company, then unpaid and outstanding by reason of said loan, in the event said Wells should die before he had fully paid the same; that the balance remaining after said payment should be paid to his wife and children, or to whomsoever, from time to time, he might designate in writing by way of substitution; that his said children should equally share any such balance with his said wife; that if the whole or any part of the proceeds from said insurance contract should be applied in the payment of said loan, or any part thereof, then the beneficiaries thereunder, as to the sum so applied, should be subrogated to the rights of the improvement company, in or under any other additional security it might hold for the payment of said loan, and in particular all its rights under any mortgage or deed of trust, made or hereafter to be made, to secure said indebtedness; that in case of the application of such benefits as aforesaid, the improvement company should, upon request, transfer to the beneficiaries under said insurance contract, or under any future contract made in lieu thereof, or into which the same may be merged, such securities, so far as it could legally do, to secure such right of subrogation; and that, upon the complete payment of said indebtedness by said Wells, the assignment should become null and void. The court further found that at the time of the death of said Wells no other designation of beneficiaries for the benefits due from said relief department had been made; that at such time

there was unpaid on the indebtedness secured by said mortgage the sum of $996.40, and that there was due to the beneficiaries on account of said insurance contract the sum of $1,250; that, after the death of said Robert S. Wells, there was paid to the superintendent of the relief department out of the benefits due on said insurance contract, by virtue of said assignment to secure said debt, the sum of $996.40, which amount was paid by said superintendent to said improvement company; that upon the payment of said amount to said company it executed a written assignment of the mortgage sued on to Germaine Wells, Bessie B. Wells and Wendell E. Wells; that, after its execution, the assignment was delivered to appellant, who at the same time accepted from said railroad company, as benefits from said relief department, the sum of $84.54, being one-third of the surplus remaining after the payment of the amount of said mortgage indebtedness; that said railroad company paid to said Wendell E. Wells a like sum out of said balance of death benefits; and retained therefrom a like sum, as belonging to said Germaine Wells; that said Robert S. Wells died testate, and by the terms of his will appellant was made the sole beneficiary as to both real and personal property; that the only children born to Robert S. Wells were said Germaine and Wendell E. Wells, both of whom were children by his first marriage; that prior to the death of said Robert S. Wells, said Germaine Wells disappeared and for more than seven years prior to the commencement of this action his whereabouts have been unknown, and have never been ascertained; that on August 16, 1913, appellant executed to the Garrett Savings, Loan and Trust Company a mortgage on

the real estate described in the complaint herein to secure the payment of $1,100, and that said company accepted said mortgage with knowledge of said assignment; that the estate of said Robert S. Wells has been fully administered upon and the executor of his will has been discharged; that the amount of the principal and interest of the mortgage sued on is "$1,090.68, and that one-half of said amount to wit, $595.34" is due appellee Wendell E. Wells with costs and attorney fees; and that a reasonable fee for his attorney for the collection of the amount due him on said mortgage is $50. On the facts found the court stated conclusions of law in favor of appellee Wendell E. Wells to the effect that he was entitled to recover the sum of $595.34 on account of principal and interest, and the further sum of $50 on account of attorney fees, and to have a decree foreclosing the mortgage sued on as against all defendants, and the real estate described therein ordered sold in satisfaction of the amount due him. Judgment was rendered in conformity with the conclusions of law. From this judgment appellant has perfected a term-time appeal, and has named Wendell E. Wells, Germaine Wells, and said railroad and improvement companies, as appellees thereto. The errors assigned are based on the action of the court in stating each of its conclusions of law on the facts found.

Appellee Wendell E. Wells has filed a motion to dismiss the appeal on the ground that the Garrett Savings, Loan and Trust Company should have 1. been named in the assignment of errors as an appellee. As this is a term-time appeal, it was not necessary that appellant make any coparty against whom the judgment was rendered a party to

this appeal. Any such coparty had a right to become a party hereto by assigning errors for himself or itself. §675 Burns 1914, Acts 1895 p. 179.

But appellee contends that said trust company is not a coparty with appellant within the meaning of said section of the statute. We cannot agree with this contention. Appellant and said trust company were both made parties to complaint of appellee Wendell E. Wells. Appellant filed a cross-complaint by which she sought to quiet her .title to the real estate in question against appellees Wells and Wells and the railroad company, but not against the trust company. The judgment was against appellant and said trust company and in effect decreed that appellee Wendell E. Wells had an interest in the real estate in question superior to any title thereto claimed by appellant and superior to any interest therein claimed by said trust company as her mortgagee? It does not determine, or purport to determine, any issue between the trust company and appellant. Under these circumstances it is clear that said trust company and appellant were coparties within the meaning of said §675 Burns 1914, *supra,* and hence it was unnecessary to name it as an appellee in the assignment of errors. Appellee's motion to dismiss the appeal is therefore overruled.

The questions presented by this appeal depend primarily on the construction to be given the tripartite agreement, made on June 10, 1911, by Robert S. Wells, the superintendent of the relief department of the Baltimore and Ohio Railroad Company, and the Real Estate and Improvement Company of Baltimore City. If said agreement be construed as depriving the children of said Robert

S. Wells of all interest in so much of the proceeds.
of the insurance contract as was applied in payment
of the mortgage indebtedness in question, in pursu-
ance of the terms of said agreement, then it must be
held that appellee Wendell E. Wells had no right of
subrogation which would authorize a decree in his
favor foreclosing said mortgage. On the other hand,
if said agreement be construed as not depriving said
children of an interest in the proceeds so applied,
then a right of subrogation existed in favor of said
appellee, and he was entitled to a decree foreclosing
the mortgage in question. In considering this ques-
tion it should be noted that said Robert S. Wells
on October 14, 1907, executed a written instrument,
whereby he designated appellant and his children as
the beneficiaries of said insurance contract. Subse-
quently, on June 10, 1911, he executed the agreement
under consideration. The question arises as to what
effect this latter agreement had upon the former in-
strument with respect to the beneficiaries named
therein. In determining this question, every clause
and even every word of said latter agreement should,
if possible, have assigned to it some meaning and a
harmonious whole made to appear, for plainly the
parties so intended, since it will not be presumed that
they wilfully inserted a mere idle provision. *Irwin*
v. *Kilburn* (1885), 104 Ind. 113, 3 N. E. 650; *Warrum*
v. *White* (1909), 171 Ind. 574, 86 N. E. 959; *Nave* v.
*Powell* (1913), 52 Ind. App. 496, 96 N. E. 395; *Kann* v.
*Brooks* (1913), 54 Ind. App. 625, 101 N. E. 513. An
application of this rule makes it apparent that the
only purpose in naming the superintendent of the
relief department as the person to whom the pro-
ceeds of said insurance contract should be payable,

in the event of the insured's death before the full payment of the loan in question, was to consummate a plan whereby the proceeds of said insurance contract, which at the death of the insured would become the property of the beneficiaries theretofore designated, on October 14, 1907, should be applied to the payment of said loan, and that the beneficiaries, in lieu of the cash proceeds from said insurance contract, should be subrogated to the rights of said improvement company in the mortgage given to secure said loan. We are led to this conclusion by a number of attending facts. It will be observed that in the instrument executed by the insured on October 14, 1907, he expressly withdrew any designation of beneficiaries theretofore made by him, and in like manner made a new designation of beneficiaries who should receive the benefits of his insurance contract. In the agreement under consideration it is significant that there is no withdrawal of the existing beneficiaries. It must therefore be presumed that they continued as such, with the same interests as theretofore provided, except in so far as said agreement may have changed the same or modified their interests. It will further be observed that, while the superintendent of said relief department is designated, by way of substitution for the insured's children, as the one to whom the benefits of said insurance contract were payable in the event of a certain contingency, the agreement does not designate such superintendent as a beneficiary thereunder, or, in fact, give him any beneficial interest therein. It merely makes the proceeds thereof payable to him, in the contingency named, for a specific purpose. It provides for the payment of any surplus to the beneficiaries theretofore named, and also

stipulates that, upon the complete payment of said indebtedness by the insured, the assignment should be null and void. If such an event had happened, it is apparent that the beneficiaries theretofore named would have been entitled to receive the full amount of the proceeds of said policy direct. It finally provides that if the whole or any part of the insurance assigned by the agreement shall be applied to the payment of said indebtedness or any part thereof, then the beneficiaries theretofore named shall, as to the sum so applied, be subrogated to the rights of said improvement company in said mortgage. This last fact is of special significance, as it clearly recognizes that such payment would create a right which could only exist under the facts of this case, on the theory that the money used in the payment of said indebtedness was in fact the money of the beneficiaries theretofore designated by the insured. In view of the facts stated, we conclude that the agreement under consideration did not deprive the beneficiaries under the insurance contract, designated by the insured on October 14, 1907, of their interest in any portion of the proceeds derived therefrom; that at most it only required that such interest stand as security for said mortgage indebtedness, and that, if it were applied in payment thereof as directed, they be reimbursed through their right of subrogation as stated therein. To reach a different conclusion we would be compelled to ignore all that part of the tripartite agreement of June 10, 1911, with reference to said beneficiaries being subrogated to the rights of said improvement company, and with reference to the transference of the mortgage held by said company to said beneficiaries to secure their said

right of subrogation, in so far as it could legally do so, all of which clearly indicates that the insured fully intended to preserve to said beneficiaries the proceeds of his said insurance contract, notwithstanding he had pledged it as security for the loan which the improvement company had made to him. This we are not permitted to do, but must give effect to the real meaning of said agreement, as disclosed by all the language used, although some of it may not be the clearest or most appropriate for the expression of such meaning. It follows that appellee Wendell E. Wells was entitled to a decree foreclosing the mortgage in question, and an order for the sale of the real estate described therein to satisfy the amount due him by reason of the application of a part of the proceeds from said insurance contract to the payment of the loan for which it was pledged as security.

Appellant contends that, even if the court reaches the conclusion indicated above, still there is error in the conclusions of law, in this, that the amount stated as due appellee Wendell E. Wells and for which he is entitled to a decree of foreclosure is too large. It bases this contention on the theory that under the facts found said appellee is only entitled to recover one-fourth of the amount to which the beneficiaries under said insurance contract are subrogated without any attorney fee. As to the question of attorney's fee, we are in accord with appellant's contention. We have held that the right of the appellee Wendell E. Wells to recover is based on the right of subrogation. It has been held that the right of subrogation is one of indemnity only, and rests on an implied promise on the part of the principal; and that, where such right arises by reason of

suretyship, the surety is not entitled to recover a greater amount than he has paid for his principal. *Gieseke, Admr.,* v. *Johnson* (1888), 115 Ind. 308, 17 N. E. 573; *Goodwin* v. *Davis* (1895), 15 Ind. App. 120, 43 N. E. 881. In this case the special finding of facts does not disclose that any amount was paid as an attorney's fee by or on behalf of appellee Wendell E. Wells in the payment of the debt secured by the mortgage in question, and hence no amount on that account should be included in any recovery by said appellee.

We next direct our attention to the question raised by appellant as to what amount appellee Wendell E. Wells should recover under the facts found. It 6. will be noted that in the original contract of insurance certain beneficiaries are designated, with a right reserved to change the same; that it states what change shall be made therein *ipso facto* in the event of his marriage and provides what shares such beneficiaries shall have in the proceeds of his insurance on the happening of the event named. It will be further noted that the insured was divorced from the wife to whom he was married when the original contract of insurance became effective, and that he subsequently married appellant. After this marriage, for reasons which he evidently considered sufficient, he not only decided to make a will in favor of appellant, but he also decided to make a new designation of the beneficiaries in his insurance contract. He accomplished this latter by the written instrument of October 14, 1907, which is complete within itself and in which he expressly withdraws the designation of beneficiaries theretofore made and makes an entirely new designation in lieu thereof. In this latter

designation he provides that the proceeds from his said insurance contract should be payable "to my wife Bessie B. and my children." He makes no express provision as to how his said beneficiaries shall share said proceeds, although there was such a provision in his original contract, based on the contingency of his marriage. We are not required to search for a reason for such omission, but if one was essential it might be found in the fact that he had executed a will to the step-mother of his children in which he had made her his sole legatee, or contemplated doing so, and desired to provide in a more substantial way for the children of his first marriage through his insurance contract. A determination of the question under consideration requires that we construe the designation "my wife Bessie B. and children" as appears in the tripartite agreement of June 10, 1911. In doing this we are not aided by any statute of descent, as such statutes are not controlling in cases of this kind, but we must be guided by the intention of the insured as evidenced by the language used. It is stated in a number of authorities and has been so decided by the courts of a number of states that the language quoted above indicates an intention that the wife and each child should share equally. 14 R. C. L. 1375; 25 Cyc 898; 1 Bacon, Life and Acc. Ins. (4th ed.) §341; *Felix* v. *Ancient Order, etc.* (1883), 31 Kan. 81, 1 Pac. 281, 47 Am. Rep. 479; *Gould* v. *Emerson* (1868), 99 Mass. 154, 96 Am. Dec. 720; *Cragin* v. *Cragin* (1876), 66 Me. 517, 22 Am. Rep. 588; *Taylor* v. *Hill* (1893), 86 Wis. 99, 56 N. W. 738; *Bell* v. *Kinneer* (1897), 101 Ky. 271, 72 Am. St. 410; *Jackman* v. *Nelson* (1888), 147 Mass. 300, 17 N. E. 529. These decisions appear to be based on the rule that, where

a benefit is granted to several and their respective proportions are not specified, the beneficiaries take equally. This rule has been affirmed in this state in the cases of *Wilburn* v. *Wilburn* (1882), 83 Ind. 55; *Fountain County Coal, etc., Co.* v. *Beckleheimer* (1885), 102 Ind. 76, 1 N. E. 202, 52 Am. Rep. 645. The courts of certain other states have placed a different construction on such designation. However, we are of the opinion that the one stated *supra* should be followed, as it is not only in accord with what appears to be the better reason, but is supported by the rule stated in the cases of this state cited above. It appears from the finding of facts that appellant, the appellees Wendell E. and Germaine Wells are the persons who are entitled to share the benefits of the insurance contract in question under the written designation of beneficiaries made by the insured on October 14, 1907. Under the conclusion we have reached they would share such benefits equally.

There is no finding that any one of said beneficiaries has died and hence it will be presumed that all are in life. It further appears that the indebtedness secured by the mortgage in question was paid in equal proportions from the proceeds of said insurance contract, and hence each would be subrogated to a one-third interest in the mortgage given to secure the same. It follows that the court erred in its conclusion of law as to the amount which appellee Wendell E. Wells was entitled to recover.

Appellee Wendell E. Wells contends that appellant has waived any right to assert that the judgment is too large in amount by failing to ask the trial court to modify the same. We cannot concur in this view. Where a special finding

of facts is made and conclusions of law stated thereon, it is necessary that the judgment be in accordance with such conclusions of law. *Kratz* v. *Cook* (1904), 32 Ind. App. 469, 68 N. E. 689. The judgment in this case is in accord with the conclusions of law stated, and hence a motion to modify the judgment would have been unavailing. *Rader* v. *Sheets* (1901), 26 Ind. App. 479, 59 N. E. 1090.

Appellee Wendell E. Wells also contends that the judgment in this case is more favorable to appellant than the law warrants, and for that reason she cannot object thereto. He bases his contention on the theory that appellant was entitled to only one-third of the mortgage in question, but the effect of the judgment from which this appeal is taken is to give her one-half thereof. This theory is not tenable. While it is true that the special finding of facts only warrants conclusions of law authorizing a foreclosure of the mortgage in favor of appellee Wendell E. Wells as to one-third of the amount it secures, it does not preclude the possible return of the absent son, Germaine Wells, who was only given notice of the pendency of this action by publication, and after having the default against him set aside, under the provisions of §627 Burns 1914, §600 R. S. 1881, securing a decree of foreclosure of said mortgage for the purpose of satisfying the amount due him thereunder. Or if it could be said that said absent son is barred from any interest in appellant's real estate by the judgment entered herein, and that she has profited thereby, it does not follow that she must submit to an unwarranted judgment in appellee's favor to her damage.

It is recited in the special finding of facts, in substance, that the amount of principal and interest due under the mortgage sued on is "$1090.68, and that one-half of said amount, to wit, the sum of $595.34." is due appellee Wendell E. Wells with costs and attorney fees; and that a reasonable attorney fee for the collection of the amount due him under said mortgage is $50. There is an apparent error in this statement, either as to the amount of principal and interest due, or as to the one-half thereof. However, so much of said finding as states the amount due said appellee is a conclusion of law and has no place in the finding of facts. It is therefore not controlling, as the court must state its conclusions of law from the facts found. *Stalcup* v. *Dixon* (1893), 136 Ind. 9, 35 N. E. 987. Said statement must therefore be eliminated in considering what conclusions of law should be stated on the facts found.

The judgment is reversed, with instructions to the trial court to restate its conclusions of law in favor of appellee Wendell E. Wells for a sum equal to one-third of the amount applied by the superintendent of said relief department from the proceeds derived from said insurance contract in payment of the indebtedness secured by the mortgage in suit, together with interest thereon since the date of such payment, but without attorney fees; that said Wendell E. Wells is entitled to a decree foreclosing the mortgage in suit against all defendants and ordering a sale of the real estate described therein in satisfaction of the amount found due him, and that upon a restatement of said conclusions of law judgment be rendered in accordance therewith.

ON PETITION FOR REHEARING.

BATMAN, C. J.—Appellant, in an able brief on her petition for a rehearing, contends that the decision of the court in this case contravenes a ruling precedent of the Supreme Court, as found in certain cases cited, to the effect that beneficiaries in insurance contracts of the kind involved in this action have no vested interest therein until the death of the insured. There is nothing in the original opinion in this case, when properly construed, that either expressly or impliedly sustains this contention. We do not hold that the children of the insured had any interest whatever in the contract of insurance, as beneficiaries or otherwise, that could not have been fully and completely divested by the insured, if he had elected to do so, and had taken the proper steps to accomplish that purpose. The true purport of our holding is not that he could not have done so, but that he did not do so. The special finding of facts shows that on October 14, 1907, the insured, by an instrument in writing, specifically designated his children as beneficiaries in his insurance contract. The interest thus conferred was never divested unless the tripartite agreement of June 10, 1911, worked that result. Appellant insists that whether or not it worked such a result must be determined from the provisions of certain by-laws, which formed a part of the contract of insurance, which provided that members procuring loans must furnish life insurance, which, in case of death, will be available to discharge such loans, and also which limit the persons who may become beneficiaries, but excepting from such limitation the superintendent of the relief department, when an assign-

ment of such contract is made to him to secure a loan from the savings feature made to the insured. We cannot agree with this contention, but, on the contrary, hold that the effect of such agreement must be determined from its own provisions, as stated in our original opinion, which led to the conclusion there announced. It is quite apparent that such agreement, to which both the relief department and the improvement company were parties, might have been so drawn as to have fully complied with all the requirements of the by-laws, and to have accomplished the result for which appellant contends, but we hold that a fair interpretation of the same shows that was not done. The improvement company and relief department could waive a strict compliance with the requirement that life insurance should be obtained, and made available, in case of death, for the discharge of the loan made the insured, and could, as far as their interests were concerned, waive any formality that may have been prescribed in that regard. The only right which the superintendent of the relief department had to the proceeds of the insurance certificate in question came through the tripartite agreement. His power to dispose of the same was limited thereby. To read anything into said agreement not expressly stated or reasonably implied would be to make a new contract for the parties, which the law forbids. If it be said that the tripartite agreement does not control the disposition of the proceeds of said certificate because not in conformity with the provisions of the by-laws which form a part of the insurance contract, then the designation of beneficiaries made by the insured on October 14, 1907, would stand unmodified, as the evidence fails to dis-

close any other effort on the part of the insured, to divest, limit, or incumber the contingent interest created thereby. This, however, would weaken rather than strengthen appellant's contention. A reconsideration of the questions presented leads us to conclude that the decision announced in our original opinion is correct. The petition for a rehearing is therefore overruled.