[No. 398-3.    Division Three.    November 17, 1972.]

*In the Matter of the Estate of* ELWYN JUDSON LIVINGSTON, *Deceased.*

WILLADENE LIVINGSTON, *Appellant,* v. SHELL CHEMICAL COMPANY, *Respondent.*

*W. Walters Miller* (of *Miller & Sackmann*), for appellant.

*Homer B. Splawn,* for respondent.

GREEN, J.—Willadene S. Livingston appeals from an order removing her as executrix in the probate of her deceased husband's estate under a nonintervention will, upon request of Shell Chemical Co., respondent-creditor.

■ The sole question presented is whether or not the trial judge properly exercised his discretion in removing Mrs. Livingston as executrix. RCW 11.68.030. While the trial judge has a very ·wide discretion as to the grounds upon which he may remove an executrix, with which an appellate court should not ordinarily interfere, the grounds must be valid and supported by the record. *In re Estate of Beard,* 60 Wn.2d 127, 132, 372 P.2d 530 (1962).

Elwyn Livingston died testate December 11, 1968. His wife, Willadene, was confirmed as executrix and letters testamentary issued. Subsequently, an order of solvency was entered and the executrix was granted full nonintervention powers.

The estate was valued in excess of $1 million and included numerous parcels of land, farm equipment, crop inventory, and other miscellaneous personal property including all outstanding shares of stock in four corporations which were vertically and horizontally integrated with the extensive potato farming operation conducted by the decedent and his wife. Numerous creditors filed claims in the estate. Among them was Shell Chemical Co., an unsecured creditor. It claimed $202,104.12 against the estate by virtue of the decedent's co-signature on the obligation of Livingston Fertilizer & Chemical Co., one of the four controlled corporations.

As the probate progressed, the solvency of the estate became questionable. On January 6, 1970, estate counsel by letter informed the attorney for Shell that "At the present time I do not believe that the assets are sufficient to pay the general creditors in full." This belief was confirmed by a circular letter sent the next day to all of the unsecured creditors.

Thereafter, on February 13 Shell petitioned for removal of the executrix and for the appointment of an administrator with will annexed. It alleged that the executrix was "wasting, mismanaging and wrongfully neglecting said estate and was incompetent to administer the same." A hearing on the petition for removal took place on March 23. On that day, the executrix filed a detailed interim report. Following the hearing, the trial court directed the executrix to file (1) a list of all unpaid creditors' claims and allow or disallow them with court approval; (2) a list of all assets left in the estate; (3) a list of the assets and liabilities of each of the four corporations; and (4) a list of her personal assets. The purpose of these directives was to obtain sufficient information for the court to determine whether or not the estate was solvent and whether the executrix had been guilty of wasting, mismanaging or wrongfully neglecting the estate. The attempted compliance by the executrix with these directives was challenged when Shell, on October 1, 1970, again petitioned for removal of the executrix charging noncompliance with the court directives. On November 25, the court filed its memorandum opinion concluding that the executrix should be removed and subsequently entered findings of fact, conclusions of law, and order of removal.

For reasons that will become apparent, we deem it unnecessary to determine whether there is substantial evidence to support the trial court's findings that the executrix failed to comply with the court's directives or otherwise failed and neglected to faithfully execute her trust. The trial court made the following finding:

In the list of personal assets, Document No. 129, the executrix claimed to be entitled to a subrogation of a portion of the claim of Bank of Yakima, which would be a preferred claim on her part in the amount of $425,512.84; and such should not be determined between the executrix in that capacity and herself as an individual, she operating as a nonintervention executor under a previous order of solvency.

to which error is assigned. In the circumstances of this case, we believe this finding is supported by substantial

evidence and constitutes a sufficient ground in and of itself for the removal of the executrix.

By reason of the decedent's death, Mrs. Livingston, as named beneficiary on 11 life insurance policies, received $816,418.46. During decedent's lifetime, three of the policies were assigned to the Bank of Yakima to secure substantial loans. (The bank was also a substantial secured creditor of the estate as to other assets.) Pursuant to the assignment, proceeds totaling $425,512.84 were paid by Mrs. Livingston to the Bank of Yakima to reduce its secured claim. By virtue thereof, Mrs. Livingston claimed as her separate asset subrogation to the bank's secured claim to estate assets in the amount of $425,512.84. As the trial judge observed in his memorandum opinion, whether subrogation rights exist is a "very good question of law." In addition, three corporations controlled by the estate and the executrix are asserting claims against the estate for unliquidated amounts—one of such claims having been determined to be in the sum of $94,100.

Shell's unsecured claim alone exceeds $200,000. Additionally, there are numerous other unpaid creditors' claims. With respect to some of those claims, the executrix petitioned the court for instructions so the precise amount remains to be determined.

The claims filed by corporations controlled by the estate and the executrix and the claim by the executrix that she is individually subrogated to the claim of a secured creditor of the estate are clearly antagonistic and in conflict with the claims of other creditors to the assets of the estate. Further, they are antagonistic to her responsibilities as personal representative in conserving the assets of the estate for the benefit of all the creditors as well as the heirs of the estate. The conflict is more than academic because if Mrs. Livingston prevails on her personal subrogation claim, it will be at the expense of the unsecured creditors. In addition, Mrs. Livingston, as the chief corporate officer of the controlled corporations, will be advocating the validity and amount of the two unliquidated claims as well as validity

of the liquidated claim of $94,100 which will share in the monies available for payment of unsecured creditors. The conflict in that situation is also apparent. In our opinion, these conflicts of interest, considered in the background of the borderline solvency of the estate, constituted valid and sufficient grounds for the court in the exercise of its sound discretion to enter the order of removal and appoint a disinterested personal representative in her stead. *See* Annot., 119 A.L.R. 303 (1933).

■ During oral argument, counsel advised the court that Mrs. Livingston had brought an action against the estate asserting her subrogation rights. The fears of the trial judge at the time of her removal were thus confirmed. In that situation, the executrix is required to resign and take the rank of an ordinary creditor. *In re Estate of Parkes,* 105 Wash. 586, 591, 178 P. 830 (1919).

Judgment is affirmed.

MUNSON, C.J., and EDGERTON, J., concur.