[No. 465-3.    Division Three.    August 27, 1973.]

SHELL OIL COMPANY, *Respondent*, v. LIVINGSTON FERTILIZER AND CHEMICAL CO., INC., *et al., Appellants.*

*W. Walters Miller* (of *Miller & Sackmann*) and *Fred Shelton,* for appellants.

*Homer B. Splawn,* for respondent.

McINTURFF, J.—This action, based on an account stated for approximately $193,000 plus interest, is brought by a creditor against Livingston Fertilizer & Chemical Company, Inc. and Willadene S. Livingston as personal representative and wife of Elwyn J. Livingston, deceased. Defendants appeal from a directed verdict for the plaintiff.

On March 14, 1966 E. J. Livingston executed and delivered to plaintiff a personal guaranty of payment of all indebtedness to be incurred by a new corporation which was then in the process of formation, *i.e.,* Livingston Fertilizer & Chemical Corporation, Inc. Livingston and his wife became officers and primary stockholders of the corporation, which was engaged in the distribution of fertilizers and chemicals in the Othello area.

On June 13, 1968 the corporation, E. J. Livingston, and plaintiff entered into an agreement in which the parties acknowledged that the corporation was indebted to plaintiff "in at least the sum of $259,019.25." Livingston and the corporation agreed to be jointly and severally liable for the indebtedness. The agreement further provided "additional amounts owing by Fertilizer Company to plaintiff may be shown to exist by audit and inspection of inventories." Under the agreement, plaintiff was to receive the indebtedness over a period of years at a fixed amount per year, plus interest. After the death of E. J. Livingston plaintiff filed a creditor's claim in the probate of his estate, which was rejected, and this action was commenced.

By pretrial discovery, defendants sought to have plaintiff establish each item of the former open account with Livingston Fertilizer & Chemical Company, Inc. Plaintiff objected to the interrogatories as unduly burdensome and irrelevant. In support of its objection plaintiff filed an affidavit to the effect that its records of the open account indebtedness were unavailable; that prior to death, E. J.

Livingston had reconciled all the debts and credits in the agreement of June 13, 1968. In answer to plaintiff's objections defendants alleged that Livingston Fertilizer Company, Inc. was the real party defendant; that the debt was not due and that, if due, the debt was a corporate debt.

At the close of all the evidence the trial court directed a verdict for the plaintiff against defendant Livingston Fertilizer & Chemical Company, Inc., the estate of E. J. Livingston, individually, and the marital community of E. J. Livingston and Willadene S. Livingston.

Defendants first urge that the trial court erred in entering an order sustaining plaintiff's objections to defendants' interrogatories. The defendants contend the information sought by the interrogatories to plaintiff was relevant within the meaning of CR 26(b), and that plaintiff should have been required to furnish records of the open-account indebtedness because the agreement of June 13, 1968 was not an account-stated agreement. We disagree.

The following language in *Shaw v. Lobe*, 58 Wash. 219, 221, 108 P. 450 (1910), is apropos:

> To impart to an account the character of an account stated it must be mutually agreed between the parties that the balance struck thereon is the correct amount due from the one party to the other on the final adjustment of their mutual dealings to which the account relates. The mere rendition of an account by one party to another does not show an account stated. There must be *some form of assent to the account, that is, a definite acknowledgment of an indebtedness in a certain sum.* . . . True, assent may be implied from the circumstances and acts of the parties, but it must appear in some form.

(Italics ours.) *See Card v. Western Farmers Ass'n*, 72 Wn.2d 45, 431 P.2d 206 (1967).

In an action upon an account stated no bill of particulars needs to be filed. Further, a copy of the original account need not be annexed to the complaint, nor is it necessary in any way to describe the character of the original pleadings. The account stated is a new obligation and takes the place of previous obligations. *See* 116 A.L.R. 727 (1932). Previous

defenses available upon an account are lost upon an account stated. Restatement of Contracts § 422 (1932).

The June 13, 1968 agreement of the parties fulfills all the legal requirements for an account stated. The parties acknowledged and agreed to the amount of the indebtedness. The agreement is supported by the consideration of plaintiff's forebearance in accepting payment of the indebtedness over a 5-year period. The mere fact that additional amounts may be shown to exist by a subsequent audit and inspection of the inventories does not render the sum any less certain because the agreement reflects that E. J. Livingston acknowledged the indebtedness as being "at least the sum of $259,019.25." As noted in *Griffith v. Rosenberg*, 166 Wash. 677, 681, 8 P.2d 284 (1932):

> Where the account has been rendered to the person sought to be charged or to some one authorized to receive and adjust the same, such recipient's written acknowledgment of the correctness of the account is sufficient to establish an account stated.

Defendants' claim that they are victims of an injustice is not justified; the record reflects that the subsequent audit and inspection of the inventories resulted in a substantial credit to the corporation and E. J. Livingston personally.

Finally, it is urged that the trial court erred in directing a verdict in favor of the plaintiff because there was insufficient evidence as a matter of law that the community was liable for the act of E. J. Livingston in guaranteeing the obligations of the corporation. Additionally, it is contended there was insufficient evidence for the court to disregard the corporate entity.

The trial court held that the corporation was an alter ego of E. J. Livingston, pierced the corporate veil and held the community liable as a matter of law. As noted in *Smith v. Keating*, 52 Wn.2d 391, 394, 326 P.2d 60 (1958):

> It should be remembered that, in passing upon . . . [a motion for directed verdict] respondents' evidence will be disregarded, and the appellants' evidence, and all reasonable inferences therefrom, will be accepted as true.

*Bailey v. Carver,* 51 Wn.2d 416, 418, 319 P.2d 821 (1957) reiterates: "No discretion is involved in ruling on a motion for a directed verdict."

■ Whether the corporation was an alter ego of E. J. Livingston is a question of fact for the jury. Ordinarily a corporation is treated as a separate entity. The courts will, when justice requires, draw aside or pierce the veil of the corporate entity. However, the mere fact of common or family ownership of the stock in a corporation does not justify disregarding the corporation's separate entity. *See Rena-Ware Distribs., Inc. v. State,* 77 Wn.2d 514, 463 P.2d 622 (1970); *von Herberg v. von Herberg,* 6 Wn.2d 100, 106 P.2d 737 (1940). Although all the stock in the corporation was community-owned, a factual question on which reasonable minds could differ was presented concerning whether the corporation was conducted as a corporate entity.

■ However, the judgment of the trial court may be supported by any theory within the pleadings and proof. *State ex rel. Weiks v. Tumwater,* 66 Wn.2d 33, 400 P.2d 789 (1965); *Lundberg v. Corporation of Catholic Archbishop,* 55 Wn.2d 77, 346 P.2d 164 (1959).

■ The overriding question presented is whether the community is liable. The June 13, 1968 agreement provides for joint and several liability of the fertilizer corporation and E. J. Livingston. Further, the March 14, 1966 guaranty agreement signed by E. J. Livingston is a guaranty given by Mr. Livingston to plaintiff in consideration of plaintiff extending credit to Livingston Fertilizer & Chemical Company, Inc. It was by this guaranty that plaintiff granted credit to the corporation. All the corporate stock was community property. Thus, from the evidence, reasonable minds would not differ in concluding the community received a benefit from the guaranty of E. J. Livingston. Whether a particular transaction of the husband is a benefit to the community is not tested by whether or not a particular transaction results in a profit. *See Hanley v. Most,* 9 Wn.2d 429, 115 P.2d 933 (1941). Signing of the guaranty by E. J. Livingston was within the husband's powers as man-

ager of the community and was done for its benefit. The evidence does not create a question of fact to the contrary.

Judgment of the trial court is affirmed.

GREEN, C.J., and MUNSON, J., concur.