[No. 795-3.    Division Three.    September 16, 1974.]

WILLADENE LIVINGSTON, *Appellant,* v. FRED SHELTON, *as Administrator, et al., Respondents.*

*W. Walters Miller* (of *Miller & Sackmann*), for appellant.

*Fred Shelton,* for respondents.

GREEN, C.J.—Plaintiff, Willadene Livingston, brought this action against the administrator of the estate of her deceased husband, Elwyn J. Livingston, claiming a right to be subrogated to the position of the Bank of Yakima with respect to certain assets in the estate and to enjoin the

administrator from selling the real property mortgaged to the bank. Plaintiff appeals from a judgment of dismissal entered at the close of plaintiff's case.

The plaintiff and her husband obtained substantial loans from the Bank of Yakima to finance their farming and related business operations in and around Othello. As security for these loans, they executed, along with promissory notes, certain real estate mortgages, assignments of accounts receivable, and a general loan and collateral agreement. Additionally, the decedent, as insured, and the plaintiff as owner and beneficiary, assigned three life insurance policies to the bank.

On December 11, 1968, Mr. Livingston died from injuries received in an automobile accident, at which time the balance owing to the Bank of Yakima on the notes was $623,887.46. The bank elected to receive the proceeds of the three insurance policies, $423,516.77, rather than to foreclose the real property mortgages. Neither the total value of the bank's security nor the extent to which the bank proceeded against security other than the insurance policies is disclosed by the record.

■ The dismissal of the plaintiff's complaint presents one basic issue on appeal: Is the beneficiary of a life insurance policy assigned as collateral, along with other security, to secure a promissory note, entitled to subrogation or equitable lien rights against the other security now in the insured's estate for the amount of insurance proceeds applied against the note by the assignee-creditor? We answer "yes."

While there is no case in this state decisive of this question, many jurisdictions have recognized a beneficiary's right to subrogation. *Chaplin v. Merchants Nat'l Bank*, 186 F. Supp. 273 (N.D. Ill. 1959); *Smith v. Wells*, 72 Ind. App. 29, 122 N.E 334, 123 N.E. 644 (1919); *Barbin v. Moore*, 85 N.H. 362, 159 A. 409, 83 A.L.R. 62 (1932); *Russell v. Owen*, 203 N.C. 262, 165 S.E. 687 (1932); *Katz v Ohio Nat'l Bank*, 127 Ohio 531, 191 N.E. 782 (1934); see *Ex Parte Boddie*, 200 S.C. 379, 21 S.E.2d 4 (1942); *Smith v. Coleman*, 184 Va. 259,

35 S.E.2d 107, 160 A.L.R. 1376 (1945); *In re Estate of Cummings,* 200 Misc. 467, 105 N.Y.S.2d 104 (1951); *In re Gallagher's Will,* 57 N.M. 112, 255 P.2d 317, 329-30 (1953); *Walzer v. Walzer,* 3 N.Y.2d 8, 163 N.Y.S.2d 632, 143 N.E.2d 361 (1957); *Seitz v. Seitz,* 238 Miss. 296, 118 So. 2d 351 (1960); *In re Crossman's Will,* 39 Misc. 2d 1094, 242 N.Y.S. 2d 576 (1963); *In re Estate of Goudiss,* 39 Misc. 2d 18, 239 N.Y.S.2d 907 (1963); *Rountree v. Frazee,* 209 So. 2d 424 (Ala. 1968); *Murnane v. Murnane,* 447 S.W.2d 590 (Ky. App. 1969). The right of subrogation depends upon whether the parties to the loan intended the insurance proceeds to be the primary or secondary source for payment of the debt. 16 G. Couch, *Insurance* § 61.328-330 (2d ed. R. Anderson 1966); 2A J. Appleman, *Insurance Law and Practice* §§ 1311, 1316 (1966); *see* 43 Am. Jur. 2d *Insurance* §§ 717, 718 (1969); Annot., 160 A.L.R. 1376 (1946); Annot., 91 A.L.R.2d 496 (1963). On this point the authors of 43 Am. Jur. 2d *Insurance* §§ 717, 718 (1969) state:

§ 717:

Whether the beneficiary of a life insurance policy which the insured pledged as security for debts has the right to be subrogated to the pledgee's claim against the insured's estate for the amount paid to the pledgee out of the proceeds of the policy depends primarily upon the intention of the insured. Thus, the beneficiary's right to subrogation will be recognized where it can be concluded from all the facts and circumstances that the insured intended him to be so entitled. Applying this principle, *it has been held that the beneficiary is entitled to subrogation to the claim of a creditor against the estate of the insured, where* the creditor, instead of proceeding against the estate, obtains satisfaction from the proceeds of the policy, which had been assigned to him as security for payment of the debt, and *nothing appears in the assignment or the will to indicate an intention that the insurance proceeds should be the primary source of payment of the debt.* . . .

§ 718:

A distinct situation is presented where the insured procured a loan evidenced by his note and a trust deed or

mortgage on real estate owned by him, and assigned a policy of insurance on his life as additional collateral for the loan. Under such circumstances the beneficiary seeking subrogation to the rights of the creditor does not merely assert a right as a common creditor against the general assets of the insured's estate, but seeks to be subrogated to the position of a creditor having the right to foreclose against specific real estate securing the debt. In such cases, the right to recover is made to depend upon intention—that is, whether it appears from all the facts and circumstances that it was the intention of the parties to the loan transaction that the policy should be first applied to the payment of the debt, or whether it was intended that the real estate should be first used to satisfy the indebtedness.

(Italics ours. Footnotes omitted.)

Here, nothing in the assignment of the insurance policies or in the other evidence indicates that the insurance proceeds were intended to be the primary source for repayment of the loans. At the time the loans were obtained, the decedent (under 45 years of age) and plaintiff mortgaged or assigned substantial assets other than the three insurance policies to the bank as security. Mrs. Livingston testified, "they [the bank] depended on the mortgages and his [decedent's] past performances." As to the assignments she testified, "I don't think we foresaw Mike's death. That's just something additional that they do require." In the context of the record, it would be unreasonable to infer that the parties intended the insurance proceeds to be the primary source of payment where the existence of those proceeds hinged upon the unanticipated death of the insured, a relatively young man. If this were the intention, the assignments should have so provided or the bank should have been named a beneficiary.[1] There being no

---

[1] In *Barbin v. Moore*, 85 N.H. 362, 159 A. 409, 83 A.L.R. 62 (1932), the court said, at page 371:

"In this state of the title Leclerc [the decedent] exercised his power to pledge the policies as collateral security, in the event of his death, for a debt he was about to incur. That was all he did. He did not undertake to make a formal change of beneficiaries, either in whole or in part. If he had wished to have the insurance go to pay the debt in

evidence of a contrary intent, the other security, now assets in Mr. Livingston's estate, realistically must be deemed intended to have been the primary source of payment and the assigned insurance proceeds a secondary source of payment. Thus, under the cited authorities, there is a prima facie showing that subrogation should be allowed to the extent requested in plaintiff's complaint.

This holding finds support for another reason. Had the bank elected to proceed against the other security, rather than against the life insurance proceeds, these proceeds would have been exempt from the claim of any creditor of decedent or plaintiff under RCW 48.18.410.[2] While the assignment permitted the bank at its option to apply the insurance proceeds against the loans, there is no evidence the parties by the assignment intended to release plaintiff's exemption rights in favor of the general creditors of the insured's estate. To permit the bank at its option to do so, would defeat the statutory exemption. In this case, giving the plaintiff a subrogation right in the other security to the extent that exempt proceeds were used to satisfy the bank loans does not affect the ultimate position of the estate creditors and preserves the beneficiary's statutory exemption. *See Barbin v. Moore, supra; In re Elliott,* 74 Wn.2d 600, 620, 446 P.2d 347 (1968). A contrary result

---

any event and to the enrichment of his estate, he could have made his creditor the designated beneficiary to the extent of its claim. His failure to do this is significant of his purpose . . . . It evidences his design to secure his prospective creditor, and at the same time not to impair the beneficiaries' title beyond what was necessary to protect the lender. The distinction between an assignment of a policy and a change of beneficiary is one well recognized in law. Both are permitted under these policies, and the choice between them made by the insured indicates what he had in mind to accomplish by the transaction." [Citations omitted.]

[2]RCW 48.18.410 provides, in part:

"The lawful beneficiary, assignee, or payee of a life insurance policy . . . shall be entitled to the proceeds and avails of the policy against the creditors and representatives of the insured and of the person effecting the insurance, and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, existing at the time the proceeds or avails are made available for his own use."

should be reached only in the presence of a clear intention to do so.

The administrator urges the trial court correctly determined that plaintiff had a mere expectancy in the proceeds of the life insurance policies and upon assignment to the bank before that expectancy matured, plaintiff never became the owner of the proceeds. As a result, the administrator contends that no subrogation right exists. We disagree. Plaintiff's right to the proceeds as beneficiary was subject to the bank's prior claim under its assignment. Had the bank elected to pursue the other security, it is evident the proceeds would have been paid to plaintiff; or, if only a part of the proceeds were used, the balance would have accrued to plaintiff. The ownership was at all times in the plaintiff-beneficiary, subject only to the assignment.

It is also urged that because the bank released its mortgage on the real property after having been paid from the life insurance proceeds, plaintiff lost the bank's priority status as a mortgagee and as a result lost her subrogation rights or at most is a general creditor in the estate. We disagree. It is evident that the priority rights of creditors were established at the time of the decedent's death. In the absence of intervening rights in reliance on the bank's release, the unilateral release by the bank does not operate to destroy the lien as to the plaintiff. As to the plaintiff, equity operates in such circumstances to continue that lien in her favor as subrogee. Recognition of this concept by the courts is summarized in 51 Am. Jur. 2d *Liens* § 59 (1970):

> Under the doctrine of subrogation, which is elsewhere discussed, a lien will be kept alive, under some circumstances, in favor of one who has paid the lienholder, although the latter has satisfied and discharged it of record, provided that the equity is not a latent one and will not prejudice a bona fide purchaser. Thus, where a debtor, by fraudulent representations, induces a person to advance money to pay off liens on the debtor's property to redeem the property from execution sale, and to release a judgment of his own against the debtor which was a lien on the debtor's property, such person will, as

against the debtor, be subrogated to the rights of the persons whose liens his money discharged.

(Footnotes omitted.) and in J. Elder, *Stearns Law of Suretyship* § 11.7 (5th ed. 1951):

> The equity of the surety who pays the debt is superior to any subsequent claim of the creditor and a cancellation of the mortgage by the creditor after payment, disregarding the equity of the surety, will not affect the right of subrogation, except as to innocent third persons whose claims thereafter attach. Thus, where the creditor, on receipt of payment from the surety, entered a satisfaction of the mortgage on the records and thereafter acquired a judgment lien upon the land, it was held that the equity of the surety was superior to the judgment lien.

(Footnotes omitted.)

Therefore, as in other jurisdictions, we hold that plaintiff made a prima facie showing that she is entitled to be subrogated to the rights of the Bank of Yakima against those assets of the decedent's estate given as security for the loans to the extent the insurance proceeds were used to pay such loans as prayed for in her complaint.

The judgment of dismissal entered at the close of plaintiff's evidence is reversed and the cause remanded for resumption of proceedings in accordance with this opinion.

MUNSON and McINTURFF, JJ., concur.

Petition for rehearing denied November 19, 1974.

Review granted by Supreme Court January 22, 1975.