[No. 43546.  En Banc.  July 3, 1975.]

WILLADENE LIVINGSTON, *Respondent*, v. FRED SHELTON, *as Administrator, Petitioner.*

*Miller & Sackmann* and *W. Walters Miller*, for appellant.

*Fred Shelton*, pro se.

WRIGHT, J.—The issue herein is whether the surviving spouse is subrogated to the position of a secured creditor of her husband's estate by reason of the assignment by her of all her interest in three insurance policies to a creditor-bank, as collateral for a loan made to the marital community. We answer in the negative, reversing the Court of

Appeals and reinstating the judgment of dismissal by the trial court against the widow, who was plaintiff in the trial court.

The Livingstons obtained substantial loans from the Bank of Yakima to finance their farming and related business operations in and around Othello. As security for these loans, they executed promissory notes, real estate mortgages, assignments of accounts receivable, and a general loan and collateral agreement. In addition, they assigned to the bank three life insurance policies on the life of Mr. Livingston.

On December 11, 1968, Mr. Livingston died from injuries received in an automobile accident. The balance then owing to the Bank of Yakima was $623,887.46. The bank elected to take the proceeds of the three insurance policies, $423,516.77, and thereby avoid foreclosure of the real property mortgages. The bank was listed as a party in the caption of this case, but was never served with process and has taken no part in this litigation. The bank, in fact, has been paid in full. The present administrator approved and paid a creditor's claim for the difference between the proceeds of the policies of life insurance and the total owed to the bank.

The widow, as beneficiary under the policies, filed an action outside of probate, claiming her right of subrogation and was thereupon removed as executrix. *In re Estate of Livingston*, 7 Wn. App. 841, 502 P.2d 1247 (1972). The trial court dismissed the action, finding no right to subrogation. The Court of Appeals reversed.

The Court of Appeals, in its detailed examination of the authorities dealing with the issue of subrogation to insurance proceeds assignment in probate proceedings, stated the law correctly in *Livingston v. Shelton*, 11 Wn. App. 854, 526 P.2d 385 (1974) at 855-56:

> While there is no case in this state decisive of this question, many jurisdictions have recognized a beneficiary's right to subrogation. *Chaplin v. Merchants Nat'l Bank*, 186 F. Supp. 273 (N.D. Ill. 1959); *Smith v. Wells*, 72 Ind. App. 29, 122 N.E. 334, 123 N.E. 644 (1919); *Barbin v.*

*Moore*, 85 N.H. 362, 159 A. 409, 83 A.L.R. 62 (1932); *Russell v. Owen*, 203 N.C. 262, 165 S.E. 687 (1932); *Katz v. Ohio Nat'l Bank*, 127 Ohio 531, 191 N.E. 782 (1934); *see Ex Parte Boddie*, 200 S.C. 379, 21 S.E.2d 4 (1942); *Smith v. Coleman*, 184 Va. 259, 35 S.E.2d 107, 160 A.L.R. 1376 (1945); *In re Estate of Cummings*, 200 Misc. 467, 105 N.Y.S.2d 104 (1951); *In re Gallagher's Will*, 57 N.M. 112, 255 P.2d 317, 329-30 (1953); *Walzer v. Walzer*, 3 N.Y.2d 8, 163 N.Y.S.2d 632, 143 N.E.2d 361 (1957); *Seitz v. Seitz*, 238 Miss. 296, 118 So. 2d 351 (1960); *In re Crossman's Will*, 39 Misc. 2d 1094, 242 N.Y.S.2d 576 (1963); *In re Estate of Goudiss*, 39 Misc. 2d 18, 239 N.Y.S.2d 907 (1963); *Rountree v. Frazee*, 209 So. 2d 424 (Ala. 1968); *Murnane v. Murnane*, 447 S.W.2d 590 (Ky. App. 1969). The right of subrogation depends upon whether the parties to the loan intended the insurance proceeds to be the primary or secondary source for payment of the debt. 16 G. Couch, *Insurance* § 61.328-330 (2d ed. R. Anderson 1966); 2A J. Appleman, *Insurance Law and Practice* §§ 1311, 1316 (1966); *see* 43 Am. Jur. 2d *Insurance* §§ 717, 718 (1969); Annot., 160 A.L.R. 1376 (1946); Annot., 91 A.L.R.2d 496 (1963).

Our own examination of these and other authorities, reveals that the facts of this case warrant the application of a different rule. For as the trial court correctly said, this is not a subrogation case at all. In all of the above cases, the loan for which security was given, was made only to the deceased without the beneficiary joining in the obligation to repay, or sharing in the right to spend the money advanced. Except for *In re Gallagher's Will*, 57 N.M. 112, 255 P.2d 317, 37 A.L.R.2d 149 (1953), which is distinguishable, no case has dealt with subrogation where a marital community, in a community property jurisdiction, has acquired ownership in the insurance policy which is being offered as collateral for a community obligation. In *Gallagher* there was no problem of adequate assets to pay all creditors. On the contrary, in the instant case there were substantial problems as to the solvency of the estate. *In re Estate of Livingston*, 7 Wn. App. 841, 502 P.2d 1247 (1972); *Shell Oil Co. v. Livingston Fertilizer & Chem. Co.*, 9 Wn. App. 596, 513 P.2d 861 (1973). The only reason subrogation was

sought in *Gallagher* was to reduce inheritance taxes. The bank therein filed a creditor's claim for the amount which had been borrowed by deceased and the surviving spouse and took payment from insurance proceeds. Finally, none of the cases or texts mentioned above, nor cases revealed in our own examination of the law, deal with a factual situation where the party seeking subrogation has an ownership interest in the policy offered as collateral and has voluntarily assigned his or her rights as beneficiary in such policy, as a condition to receiving the loan.

In the instant action, the spouses constitute a single unity in all of the transactions involved herein. The decedent and his spouse were both codebtors to the bank, since both signed the instruments of debt as members of the community and individually. In addition to the community composed of Mr. and Mrs. Livingston, there were several closely held corporations involved in the transactions with the bank, in which corporations both were officers, directors and stockholders. The three life insurance policies are community assets because premiums were paid with community funds. *Occidental Life Ins. Co. v. Powers*, 192 Wash. 475, 74 P.2d 27, 114 A.L.R. 531 (1937); *In re Estate of Coffey*, 195 Wash. 379, 81 P.2d 283 (1938); *King v. Prudential Ins. Co. of America*, 13 Wn.2d 414, 125 P.2d 282 (1942); *In re Estate of Towey*, 22 Wn.2d 212, 155 P.2d 273 (1945); *Small v. Bartyzel*, 27 Wn.2d 176, 177 P.2d 391 (1947). Therefore, the plaintiff must be classified as a co-owner/beneficiary in the three policies. *In re Estate of Leuthold*, 52 Wn.2d 299, 324 P.2d 1103 (1958). She voluntarily assigned all her interest, separate and otherwise, in the proceeds of the policy and because of that assignment, the loan was made.

Subrogation exists only as a three-party transaction, where the subrogee is answering for the debt of another. As stated in *Lawyers Title Ins. Corp. v. Edmar Constr. Co.*, 294 A.2d 865 (D.C. Ct. App. 1972) at 869:

Generally speaking, "the essential elements necessary for legal subrogation . . . are: (1) the existence of a

debt or obligation for which a party, other than the subrogee, is primarily liable, which (2) the subrogee, who is neither a volunteer nor an intermeddler, pays or discharges in order to protect his own rights and interests." [Citation omitted.] But more specifically, "the question as to whether one is entitled to subrogation, depends on whether the claimant is a mere volunteer and, *if not, whether he is on equitable principles entitled to such subrogation* as against other claimants." [Citation omitted.] (emphasis added).

The right to subrogation depends upon "the circumstances and equities of the particular case." [Citation omitted.] It is normally "enforced only in favor of a superior equity, and it is for the equity court to say who, in good conscience, should bear the loss. . . . Accordingly, subrogation [may] be invoked only where justice [demands] its application and where the equities of the party asking it [are] greater than those of his adversary." [Citation omitted.]

In *Austin v. Wright,* 156 Wash. 24, 30, 286 P. 48 (1930), we stated that:

"Subrogation is allowed only in favor of one who under some duty or compulsion, legal or moral, pays the debt of another; and not in favor of him who pays a debt in performance of his own covenants, for the right of subrogation never follows an actual primary liability, and there can be no right of subrogation in one whose duty it is to pay, or in one claiming under him against one who is secondarily liable, or not liable at all. In such cases payment is extinguishment." 37 Cyc. 374.

"It is accordingly the universal rule that the right of legal subrogation need not rest upon any formal contract or written agreement, nor does it follow from any fixed law; but it exists on principles of mere equity and benevolence, and is founded on the relationship of the parties. However, it is only in cases where the person advancing money to pay the debt of a third person stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect. . . ." 25 R. C. L. 1316.

*See in accord, Simpson on Suretyship,* 205-07 (1950); Sterns, *Law of Suretyship* 439-41 (5th ed. 1951).

The plaintiff is a primary debtor, and the coowner and later coassignor of the insurance policy. Obviously, therefore, she cannot be a third party and secondarily liable so as to be entitled to subrogation. A person cannot seek subrogation for paying one's own debt.

Accordingly, the Court of Appeals is reversed and the trial court's judgment of dismissal is reinstated.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, UTTER, BRACHTENBACH, and HOROWITZ, JJ., concur.

Petition for rehearing denied October 17, 1975.