**UNION CARBIDE CORPORATION, a corporation, Plaintiff-Appellant,**

v.

**Sidney KATZ, Defendant-Appellee.**

**No. 71-1921.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 26, 1972.

Decided Nov. 5, 1973.

P. Terence Crebs, Thomas E. Toney, III, St. Louis, Mo., John M. Ferguson, Belleville, Ill., for plaintiff-appellant.

Sam S. Pessin, Belleville, Ill., for defendant-appellee.

Before CASTLE, Senior Circuit Judge, KILKENNY, Senior Circuit Judge * and FAIRCHILD, Circuit Judge.

FAIRCHILD, Circuit Judge.

Plaintiff Union Carbide sought recovery from defendants Harold Rosen and Sidney Katz on a contract of guaranty.[1] The district court entered judgment against Rosen, but in favor of Katz. Plaintiff appealed from the latter portion.

Plaintiff sold merchandise on credit to Automotive Warehouses, Inc. In the summer of 1969, plaintiff decided to require a personal guaranty of payment of the corporate indebtedness. Rosen, president of the corporation, and Katz, a stockholder, signed a guaranty prepared by plaintiff.

The guaranty recited that it was in consideration of "merchandise sold or consigned or hereafter sold or consigned and credit given or hereafter given from time to time" to the Warehouse corporation. The signers jointly and severally guaranteed payment to plaintiff of all indebtedness "now existing or hereafter created or arising." The guaranty was to be continuing and to remain in effect until written notice of discontinuance be received by plaintiff, but in no event until any and all indebtedness created or existing before receipt of such notice shall be fully paid. "Notice of the creation and existence of any of said indebtedness, and of . . . the acceptance of this guaranty, and of any and all extensions of credit and indulgence hereunder, are hereby expressly waived."

Katz added a notation opposite his signature, the notation also being signed by him: "This guaranty is limited to $150,000—; and must be renewed annually; and effective only as long as I remain an officer, director or stockholder." In a note to plaintiff accompanying the guaranty, Katz warranted his net worth to be in excess of $500,000, and added: "Please note the restrictive covenant I place on my personal guarantee."

The signed guaranty was received by plaintiff October 2. On October 10 and thereafter, plaintiff shipped goods to the Warehouse corporation on credit.

On October 28, a representative of plaintiff wrote to the Warehouse corporation enclosing a new form of guaranty, prepared by plaintiff's law department. The new form incorporated the $150,000 limitation, and modified the provisions as to notice of termination. The new form did not provide automatic termination in the event Katz ceased to be an officer, director, or stockholder, nor termination at the end of a year unless renewed. The letter pointed out that Mr. Katz could terminate at any time in compliance with the notice provisions.

This form of guaranty was never signed, and the district court deemed it a counter offer and thus a rejection of the signed guaranty. We think, with respect, that the court overlooked the character of the original guaranty as an offer by Katz (as well as Rosen) which ripened into a contract upon the contemplated extension of credit and needed no return promise or other manifestation of acceptance by plaintiff.

---

* Senior Circuit Judge John F. Kilkenny of the Ninth Circuit is sitting by designation.

1. Jurisdiction is founded on diversity. All parties consider that substantive questions are controlled by the law of Illinois.

During November, plaintiff shipped additional goods to the Warehouse corporation on credit.

On November 21, plaintiff's representative wrote to Mr. Rosen, saying, among other things:

"Harold, according to my records, we still have not received the personal guaranty form from Mr. Katz. I wish you would talk to him and get this matter resolved since if we do not get this document shortly, I will have no choice but to suspend all further shipments. I am sure we both do not wish to see this happen. If you think it would be more effective, please let me know and I will contact Mr. Katz myself."

Although the Oct. 28 form of guaranty was never signed, plaintiff continued to make shipments on credit and ultimately the unpaid obligations exceeded $230,000.

Mr. Katz testified that on January 2, 1970, he sold his stock in return for a note, secured by the stock. On February 6, he wrote plaintiff as follows:

"This is to inform you that I am notifying Union Carbide Corporation of my desire to revoke the restricted and limited personal guarantee for Automotive Warehouses, Inc. which was executed by me on August 20, 1969."

"I am doing this in as much as there has been a decided change in my own personal financial and stockholding position."

Plaintiff acknowledged receipt of the letter revoking the executed guaranty and stated that "as soon as the purchases made during the period in which your personal guarantee was in effect are paid" the guaranty would be returned.

Mr. Katz responded on February 18. He took the position, in substance, that the guaranty he executed was void because he had ceased to be an officer, director, or stockholder. Although he noted that he had never signed the October 28 guaranty, it is clear from the context that he was pointing out that his notice complied with the guaranty he

had executed and that he was not bound to comply with the October 28 provisions as to notice. We read the letter as suggesting the defense that when the executed guaranty was terminated, he no longer had an obligation with respect to indebtedness outstanding at the time of termination. The record does not show when he first took the position, advanced at trial, that the guaranty he executed had never become a contract.

The guaranty executed by Mr. Katz, including, of course, the terms he wrote in, was an unconditional offer to guarantee payment of credit extended by plaintiff to the Warehouse corporation. It was characterized in the document itself as "a continuing, absolute and unconditional guaranty." The additions made by Mr. Katz did not detract from that character, but limited the amount of his liability, and made certain new provisions as to termination.

Such unconditional offer to guarantee payment of plaintiff's extensions of credit was accepted by plaintiff's October 10 extension of credit. Frost v. Standard Metal Co., 215 Ill. 240, 74 N.E. 139 (1905); Mamerow v. National Lead Co., 206 Ill. 626, 69 N.E. 504, 508 (1903). See Restatement, Security § 86, Contracts § 56. Notice of acceptance was expressly waived.

■ Assuming Mr. Katz ceased to be an officer, director, or stockholder on January 2, 1970, the guaranty then terminated, unless his delay in notifying plaintiff of the change might estop him from relying on that event. In any case, the guaranty was terminated no later than notice of revocation February 6. Mr. Katz was not liable for extensions of credit after termination, but was liable up to $150,000 for indebtedness created before termination and remaining unpaid. Mamerow v. National Lead Co., supra, p. 507; Tausig v. Reid, 145 Ill. 488, 32 N.E. 918, 919 (1893).

The fact that extensions of credit aggregated more than $150,000 was not a complete defense. The limitation to that amount was a limitation upon his total

liability, and not upon the aggregate extension of credit. Frost v. Standard Metal Co., supra; Tausig v. Reid, supra.

Plaintiff's October 28 request for execution of a new guaranty with somewhat different terms did not, by operation of law, repudiate or reject or establish nonreliance upon the offer of guaranty previously executed by Katz. Essex International, Inc. v. Clamage, 440 F.2d 547, 551 (7th Cir., 1971); Pharis Tire & Rubber Co. v. May, 192 Ark. 760, 94 S.W.2d 1040 (1936); American Woolen Co. v. Moskowitz, 159 App.Div. 382, 144 N.Y.S. 532, 534 (1913); Bryant v. Food Mach. & Chem. Corp. Niagara Chem. Div., 130 So.2d 132, 134 (3rd Dist. Ct. of Appeal Fla., 1961); Cinerama, Inc. v. Sweet Music, S.A., 355 F.Supp. 1113, 1120 (S.D.N.Y.1972).

The district court made no finding that in shipping goods to the Warehouse corporation, plaintiff did not in fact rely on the guaranty signed by Katz. Its request for execution of the new guaranty and its unexecuted threat to stop shipments if not signed would be the only evidence possibly tending to indicate lack of reliance. In the face of all the other circumstances a finding of lack of reliance would have been clearly erroneous.

The district court did not reach the question whether the termination occurred January 2 or February 6. Consequently there was no finding of the amount of indebtedness unpaid at the date of termination. It appears probable that the figure even at January 2 exceeded $150,000. If so, judgment should be entered for $150,000. If, on remand, the district court decides that a further hearing is required to determine whether the figure was less than $150,000 on January 2, 1970, there should be a hearing to determine whether the date of termination was January 2 or later and the figure as of that date. Plaintiff will be entitled to interest from the date of demand, as well as costs. Feucht v. Clarke, 299 Ill.App. 477, 20 N.E.2d 312 (1939).

The portion of the judgment appealed from is reversed and the cause remanded for further proceedings, if required, and entry of judgment for plaintiff, consistent with this opinion.